IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE SCHNEIDER<br>17721 Glenwood Avenue<br>Lake Milton, Ohio 44429 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| TRUMBULL COUNTY VETERANS<br>SERVICE COMMISSION<br>253 E. Market Street<br>Warren, Ohio 44481 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | )<br>) | |

Plaintiff, Adrienne Schneider, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## **PARTIES**

1. Schneider is a resident of in the county of Mahoning, state of Ohio.

2. Trumbull County Veterans Service Commission ("VSC") is a state governmental entity.

3. VSC was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 2000e-2 *et seq*.

4. VSC was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

## **JURISDICTION & VENUE**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Schneider is alleging Federal Law Claims under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

6. All material events alleged in this Complaint occurred in county of Trumbull.

7. This Court has supplemental jurisdiction over Schneider's state law claims pursuant to 28 U.S.C. § 1367 as Schneider's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Schneider dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), Charge No. 532-2020-02815 against VSC.

10. On or about January 12, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Schneider regarding the Charges of Discrimination brought by Schneider against VSC in EEOC Agency Charge No. 532-2020-02815.

11. Schneider received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Schneider has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Schneider has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

14. Schneider has properly exhausted her administrative remedies pursuant to R.C. § 4112.01 *et seq*.

## FACTS

15. Schneider is a former employee of VSC.

16. Schneider is female.

17. VSC hired Schneider on or about March 11, 2019.

18. VSC employed Schneider as an administrative assistant.

19. Isenberg is male.

20. During all material events asserted herein, Mark Isenberg was employed by VSC as the Senior Service Officer.

21. Upon information and belief, as the Senior Service Officer, Isenberg has and/or had authority to hire, fire, and/or discipline employees.

22. During Schneider's employment, Isenberg continually subjected Schneider to sexual harassment.

23. Isenberg regularly said to Schneider, "you're so fucking hot."

24. A reasonable person would find a male supervisor saying to a subordinate female employee, "you're so fucking hot," to be serve and/or pervasive.

25. Schneider was embarrassed when Isenberg said, "you're so fucking hot," to her.

26. Schneider was offended when Isenberg said, "you're so fucking hot," to her.

27. When Isenberg said to Schneider, "you're so fucking hot," it constituted sexual harassment.

28. As a manager and/or employer of VSC, when Isenberg said to Schneider, "you're so fucking hot," VSC engaged in sexual harassment.

29. Isenberg regularly said to Schneider, "you're so sexy."

30. A reasonable person would find a male supervisor saying to a subordinate female employee, "you're so sexy," to be serve and/or pervasive.

31. Schneider was embarrassed when Isenberg said, "you're so sexy," to her.

32. Schneider was offended when Isenberg said, "you're so sexy," to her.

33. When Isenberg said to Schneider, "you're so sexy," it constituted sexual harassment.

34. As a manager and/or employer of VSC, when Isenberg said to Schneider, "you're so sexy," VSC engaged in sexual harassment.

35. Schneider regularly declined Isenberg's sexual advances.

36. Isenberg regularly offered to buy Schneider lingerie.

37. A reasonable person would find a male supervisor offering to buy lingerie for a subordinate female employee to be serve and/or pervasive.

38. Schneider was embarrassed when Isenberg offered to buy Schneider lingerie.

39. Schneider was offended when Isenberg offered to buy Schneider lingerie.

40. When Isenberg offered to buy Schneider lingerie, it constituted sexual harassment.

41. As a manager and/or employer of VSC, when Isenberg offered to buy Schneider lingerie, VSC engaged in sexual harassment.

42. Isenberg regularly asked Schneider to send him nude photographs of her body.

43. A reasonable person would find a male supervisor requesting a subordinate female employee to send him nude photographs of her body to be serve and/or pervasive.

44. Schneider was embarrassed when Isenberg asked Schneider to send her nude photographs of her body.

45. Schneider was offended when Isenberg asked Schneider to send him nude photographs of her body.

46. When Isenberg asked Schneider to send him nude photographs of her body, it constituted sexual harassment.

47. As a manager and/or employer of VSC, when Isenberg asked Schneider to send him nude photographs of her body, VSC engaged in sexual harassment.

48. During Schneider's employment, Isenberg told Schneider that he had an erection under his desk.

49. A reasonable person would find a male supervisor saying to a subordinate female employee that he had an erection under the desk to be serve and/or pervasive.

50. Schneider was embarrassed when Isenberg told Schneider that he had an erection under his desk.

51. Schneider was offended when Isenberg told Schneider that he had an erection under his desk.

52. When Isenberg told Schneider that he had an erection under his desk, it constituted sexual harassment.

53. As a manager and/or employer of VSC, when told Schneider that he had an erection under his desk, VSC engaged in sexual harassment.

54. During Schneider's employment, Isenberg approached Schneider with a finger puppet (hereinafter, "Finger Puppet Incident").

55. During the Finger Puppet Incident, Isenberg spoke to Schneider through a finger puppet and stated, "my therapist said I can't touch you, but my finger puppet can touch you."

56. During the Finger Puppet Incident, Isenberg rubbed his finger puppet finger on Schneider.

57. A reasonable person would find Finger Puppet Incident to be serve and/or pervasive.

58. Schneider was embarrassed by the Finger Puppet Incident.

59. Schneider was offended by the Finger Puppet Incident.

60. The Finger Puppet Incident constituted sexual harassment.

61. As the Finger Puppet Incident included physical touching, it is *per se* sexual harassment.

62. As a manager and/or employer of VSC, when Isenberg engaged in the Finger Puppet Incident, VSC engaged in sexual harassment.

63. During Schneider's employment, Isenberg told Schneider that her husband was in the way, and that Isenberg needed to get rid of Schneider's husband.

64. A reasonable person would find a male supervisor saying to a subordinate female employee that her husband was in the way and that the male supervisor needed to get rid of him to be serve and/or pervasive.

65. Schneider was embarrassed when Isenberg told Schneider that her husband was in the way, and that Isenberg needed to get rid of Schneider's husband.

66. Schneider was offended when Isenberg told Schneider that her husband was in the way, and that Isenberg needed to get rid of Schneider's husband.

67. When Isenberg told Schneider that her husband was in the way, and that Isenberg needed to get rid of Schneider's husband, it constituted sexual harassment.

68. As a manager and/or employer of VSC, when told Schneider that her husband was in the way, and that Isenberg needed to get rid of Schneider's husband, VSC engaged in sexual harassment.

69. During a social gathering of VSC employees, Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot.

70. A reasonable person would find a male supervisor physically rubbing a subordinate female employee's hips and saying to meet him in the parking lot to be serve and/or pervasive.

71. Schneider was embarrassed when Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot.

72. Schneider was offended when Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot.

73. When Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot, it constituted sexual harassment.

74. As a manager and/or employer of VSC, when Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot, VSC engaged in sexual harassment

75. When Isenberg physically rubbed Schneider's thighs and hips and asked her to meet him in the parking lot, as this included physical touching, it was *per se* sexual harassment.

76. During Schneider's employment, Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave.

77. A reasonable person would find a male supervisor saying to a subordinate female employee that he wanted to keep her locked in a box in his basement and use her as his sex slave to be serve and/or pervasive.

78. Schneider was embarrassed when Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave.

79. Schneider was offended when Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave.

80. When Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave, it constituted sexual harassment.

81. As a manager and/or employer of VSC, when told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave, VSC engaged in sexual harassment.

82. When Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave, Isenberg did so in front of multiple coworkers.

83. When Isenberg told Schneider that Isenberg wanted to keep Schneider locked in a box in his basement and use her as his sex slave, and said this in front of multiple coworkers, all of the coworkers laughed at Schneider.

84. Schneider complained about the sexual harassment she experienced and asked Isenberg to stop sexually harassing her.

85. As a supervisor for VSC, Isenberg had a duty to report and/or to investigate complaints of discrimination and/or harassment.

86. Isenberg failed to report Schneider's complaint of harassment.

87. When Schneider complained to Isenberg about his harassment of her, Isenberg advised, "Herm already knows."

88. During all material events, Herman Breuer was the Director of VSC.

89. During all material events, Breuer had authority to hire, fire, and/or disciplined employees of VSC.

90. Upon information and belief, Breuer was aware of Isenberg's sexual harassment of Schneider.

91. Despite being aware of Isenberg's sexual harassment of Schneider, Breuer failed to take prompt remedial action.

92. In failing to take prompt remedial action against Isenberg despite being aware of his sexual harassment of Schneider, VSC ratified the sexual harassment that Schneider suffered.

93. On or about February 20, 2020, Schneider complained to Cari Delgado about the sexual harassment that she suffered from Isenberg.

94. During all material events, Delgado was the Deputy Director.

95. During all material events, Delgado had the authority to hire, fire, and/or discipline employees of VSC.

96. Upon information and belief, Delgado had a duty to investigate or report Schneider's complaint of sexual harassment.

97. VSC failed to take prompt remedial action following Schneider's February 20, 2020 complaint of sexual harassment.

98. In failing to take prompt remedial action following Schneider's February 20, 2020 complaint of sexual harassment, VSC ratified the sexual harassment that Schneider experienced.

99. In failing to take prompt remedial action following Schneider's February 20, 2020 complaint of sexual harassment, VSC retaliated against Schneider.

100. VSC terminated Schneider's employment on May 7, 2020.

101. VSC did not have a legitimate business reason to terminate Schneider's employment.

102. VSC terminated Schneider's employment because she suffered from sexual harassment.

103. VSC terminated Schneider's employment because she declined Isenberg's sexual advances.

104. VSC terminated Schneider's employment in retaliation for reporting sexual harassment.

105. Upon information and belief, VSC has a progressive discipline policy.

106. When VSC terminated Schneider's employment, it violated its progressive discipline policy.

107. Upon information and belief, when VSC terminates the employment of individuals who have not suffered from sexual harassment, VSC does not violate its progressive discipline policy.

108. VSC violated its progressive discipline policy when terminating Schneider's employment because she suffered from sexual harassment.

109. Upon information and belief, when VSC terminates the employment of individuals who have not reported sexual harassment, VSC does not violate its progressive discipline policy.

110. VSC violated its progressive discipline policy when terminating Schneider's employment in retaliation for her reporting sexual harassment.

111. As a result of VSC's conduct, Schneider has suffered, and continues to suffer from compensatory and non-compensatory damages.

**COUNT I:  SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. 2000e-2 *et seq*.**

112. Schneider restates each and every paragraph of this Complaint as though it were fully restated herein.

113. Schneider was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

114. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

115. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Schneider repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

116. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendant, Schneider reported Isenberg's sexual harassment to Defendant.

117. Defendant failed to take prompt remedial action following Schneider's reporting of sexual harassment.

118. Defendant ratified the sexual harassment that Schneider suffered.

119. Defendant terminated Schneider's employment because she rebuffed Isenberg's sexual advances.

120. Defendant terminated Schneider's employment because she suffered from sexual harassment.

121. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of 42 U.S.C. 2000e-2 *et seq*.

122. Schneider suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 *et seq*.

123. As a direct and proximate result of Defendant's conduct, Schneider has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.*

124. Schneider restates each and every paragraph of this Complaint as though it were fully restated herein.

125. Schneider was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

126. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

127. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Schneider repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

128. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendant, Schneider reported Isenberg's sexual harassment to Defendant.

129. Defendant failed to take prompt remedial action following Schneider's reporting of sexual harassment.

130. Defendant ratified the sexual harassment that Schneider suffered.

131. Defendant terminated Schneider's employment because she rebuffed Isenberg's sexual advances.

132. Defendant terminated Schneider's employment because she suffered from sexual harassment.

133. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. §4112.02(A).

11

134. Schneider suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

135. As a direct and proximate result of Defendant's conduct, Schneider has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. 2000e-2 *et seq*.

136. Schneider restates each and every prior paragraph of this complaint, as if it were fully restated herein.

137. As a result of the sexual harassment that Schneider suffered, Schneider declined the sexual advances of Isenberg.

138. As a result of the sexual harassment that Schneider suffered, Schneider complained to Isenberg to stop harassing her.

139. As a result of the sexual harassment that Schneider suffered, Schneider complained to Delgado.

140. Subsequent to Schneider reporting sexual harassment, Defendant failed to take prompt remedial action.

141. Subsequent to Schneider reporting sexual harassment, Defendant continued to subject Schneider to sexual harassment.

142. Subsequent to Schneider reporting sexual harassment, Defendant ratified the sexual harassment that Schneider suffered.

143. Subsequent to Schneider reporting sexual harassment, Defendant terminated Schneider's employment.

144. Defendant's actions were retaliatory in nature based on Schneider's opposition to the unlawful discriminatory conduct.

145. Defendant terminated Schneider's employment in retaliation for her making complaints regarding sexual harassment.

146. Pursuant to 42 U.S.C. 2000e-2 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in that section.

147. Schneider suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 *et seq*.

148. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Schneider, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

149. Schneider restates each and every prior paragraph of this complaint, as if it were fully restated herein.

150. As a result of the sexual harassment that Schneider suffered, Schneider declined the sexual advances of Isenberg.

151. As a result of the sexual harassment that Schneider suffered, Schneider complained to Isenberg to stop harassing her.

152. As a result of the sexual harassment that Schneider suffered, Schneider complained to Delgado.

153. Subsequent to Schneider reporting sexual harassment, Defendant failed to take prompt remedial action.

154. Subsequent to Schneider reporting sexual harassment, Defendant continued to subject Schneider to sexual harassment.

155. Subsequent to Schneider reporting sexual harassment, Defendant ratified the sexual harassment that Schneider suffered.

156. Subsequent to Schneider reporting sexual harassment, Defendant terminated Schneider's employment.

157. Defendant's actions were retaliatory in nature based on Schneider's opposition to the unlawful discriminatory conduct.

158. Defendant terminated Schneider's employment in retaliation for her making complaints regarding sexual harassment.

159. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

160. Schneider suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

161. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Schneider, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Schneider demands from Defendants the following:

(a) Issue an order requiring VSC to restore Schneider to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Schneider for compensatory damages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Schneider's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        /s/ *Daniel S. Dubow*
        Daniel S. Dubow (0095530)
        Samuel B. Robb (0099035)
        **SPITZ**
        25825 Science Park Drive, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:    (216) 291-5744
        Email: daniel.dubow@spitzlawfirm.com
               sam.robb@spitzlawfirm.com

        *Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Adrienne Schneider demands a trial by jury by the maximum number of jurors permitted.

        /s/ *Daniel S. Dubow*
        Daniel S. Dubow (0095530)
        Samuel B. Robb (0099035)
        **SPITZ**