# TABLE OF CONTENTS

I. SUMMARY OF THE CASE ....................1

II. FACTUAL BACKGROUND ....................1

A. Schneider's Allegations of Harassment ....................2

B. Schneider's February 20, 2020 Complaint. ....................3

C. Schneider's May 7, 2020 Layoff. ....................6

III. STANDARD OF REVIEW ....................6

IV. LAW AND ARGUMENT ....................7

A. TCVSC Is Not a Covered Employer under Title VII, So Plaintiff's Title VII Claims Must be Dismissed. ....................7

B. Even if TCVSC was a Covered Employer under Title VII, TCVSC is Not Liable under Federal or State Law for the Alleged Sexual Harassment. ....................9

1. TCVSC Is Not Liable because It Did Not Know, and Had No Reason to Know, of the Alleged Harassment until February 20, 2020. ....................11

2. TCVSC's Response was Reasonable Per Se because it Ended the Alleged Harassment. ....................12

C. Even if TCVSC was a Covered Employer under Title VII, TCVSC is Not Liable under Federal or State Law for Retaliation because there is No Causal Connection between Plaintiff's Harassment Complaint and her Layoff. ....................13

V. CONCLUSION ....................16

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 7
*Brooks v. S.C. Dep't of Corr.*, No. CV21800721TMCMGB, 2020 WL 4678966 (D.S.C. Apr. 13, 2020), No. 2:18-CV-721-TMC, 2020 WL 3097356 (D.S.C. June 9, 2020).......... 11
*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).......... 10
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 6
*Doe v. City of Detroit, Mich.*, 3 F.4th 294 (6th Cir. 2021) .......... 9, 12
*Faragher v. Boca Raton,* 524 U.S. 775 (1998).......... 10
*Fleenor v. Hewitt Soap Co.*, 81 F.3d 48 (6th Cir. 1996).......... 12
*Garcia v. Beaumont Health Royal Oak Hosp.*, No. 22-1186, 2022 WL 5434558 (6th Cir. Oct. 7, 2022) .......... 10, 12
*Gwen v. Reg'l Transit Auth.*, 7 F. App'x 496 (6th Cir. 2001) .......... 12
*Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999) .......... 12
*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) .......... 13
*McDonnell Douglas. Strickland v. City of Detroit*, 995 F.3d 495 (6th Cir. 2021) .......... 13
*Mickey v. Zeidler Tool & Die Co*., 516 F.3d 525 (6th Cir. 2008).......... 14
*Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744 (6th Cir. 2008).......... 12
*Plumbers & Steamfitters Joint Apprenticeship Commt., v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981) .......... 9
*Randolph v. Ohio Dep't of Youth Services*, 453 F.3d 724 (6th Cir. 2006) .......... 13
*Satterwhite v. Ashtabula Cnty. Metroparks*, 514 F. Supp. 3d 1014 (N.D. Ohio 2021) .......... 9
*Scott v. Harris*, 550 U.S. 372 (2007) .......... 7
*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013) .......... 12
*Walters v. Metropolitan Educ. Enterprises, Inc.*, 519 U.S. 202 (1997).......... 7
*Wormald v. Overhead Door Corp.*, No. 5:21-CV-00585, 2022 WL 7579793 (N.D. Ohio Oct. 13, 2022) .......... 14
*Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400 (6th Cir. 2021) .......... 10

## Statutes

42 U.S.C. § 2000e(b) .......... 7, 9
R.C. Chapter 4112.......... 9

# BRIEF IN SUPPORT

## I. SUMMARY OF THE CASE

Plaintiff Adrienne (Sardich) Schneider was employed by the Trumbull County Veterans Services Commission ("TCVSC") as its office administrator from March 11, 2019 until her layoff on May 7, 2020 due to lack of work caused by the COVID pandemic. Plaintiff contends that she was sexually harassed by her co-worker, Mark Isenberg, from September 2019 until February 20, 2020 when she finally reported the alleged misconduct to her supervisor, Cari Delgado. TCVSC's executive director, Herman Breuer, issued Isenberg a written reprimand and instructed the two employees to stay away from each other. The resolution was effective. The alleged harassment ended as of February 20, 2020. Nevertheless, Plaintiff argues that TCVSC retaliated against her for making that complaint by laying her off three months later. Plaintiff brought this suit alleging sexual harassment and retaliation under Title VII and the Ohio Civil Rights Act.

## II. FACTUAL BACKGROUND

TCVSC hired Schneider in March 11, 2019 as its office administrator. (Schneider 49:4-5.) "[I]t was a secretarial job, front desk, pretty easy, answer phones, greet customers." (Schneider 15:13-15.) She was essentially the office receptionist. (Schneider 19:21-23.) Schneider reported to Cari Delgado, the deputy director. (Schneider 22:14-18.) Delgado reported to the executive director, Herman Breuer.

Schneider worked in a small office with few employees. (Schneider 18:9-12; Breuer 21:11.) She shared an office space with the office coordinator who handled payroll and accounts payable and receivable. (Breuer 47:20-48:2.) Their work stations were open to each other, but their sight-line was interrupted by a partial wall. (Schneider 20:9-24.) Their collective office space opened to an L-shaped hallway, off which various offices were occupied by Breuer,

Delgado, three service officers and a special projects coordinator. (Schneider 35:11-20.) Just a few feet in front of Schneider's reception window, a sheriff's deputy was posted at a desk in the lobby. (Schneider 25:14-25.) She and he could easily converse from their work stations without raising their voices. (Schneider 26:1-5.)

A live-feed video camera was mounted in the lobby, positioned toward the reception desk. All employees had access to the video to monitor the lobby for clients. (Schneider 41:8-13.) As the receptionist, Schneider also might notify a service officer that a client had arrived. She did not have to leave her desk to make the notification; she could use instant messenger or pick up the phone. (Schneider 40:8-24.)

In these close conditions, Schneider contends that senior service officer, Mark Isenberg, sexually harassed her for several months without anyone noticing.[1]

**A. Schneider's Allegations of Harassment**

Schneider first sensed Isenberg's alleged interest in her after a fundraising gala that the VSC sponsored in July 2019. (Schneider 50:24-51:9.) She claims that Isenberg told her after the party that his wife had caught him looking at Schneider. (Schneider 50:6-7; 52:17-22.) Initially, Schneider did not think much of it. However, by September 2019, Schneider claims that Isenberg was harassing her regularly. (ECF No. 1; DX E, DX H.) The alleged harassment was confined to comments, with the exception of three instances of touching. Isenberg allegedly tapped Schneider on the shoulder with a finger puppet; grabbed her hand and kissed it when she handed him something across his desk; and rubbed her thigh at a holiday event at the VFW while she was seated at the bar. (ECF No. 1; Schneider 83:15-18; 85:12-86:23; 88:18-21; 88:25-89:6.) Schneider

[1] Isenberg unequivocally denies every allegation made against him by Schneider, but for purposes of this motion, the Court must presume the truth of Plaintiff's testimony and construe the evidence in her favor.

never told Isenberg that she was upset or offended by anything he said or did. (Schneider 70:17-71:16; 87:4-8; 89:17-21; 116:10-117:7; 117:2-7; 122:3-18; 123:19-21; 126:9-13, 23-25; 128:13-129:4; 129:18-130:8; 134:5-25.) Schneider admits that, until February 20, 2020, she never told anyone in the office that she was being harassed or that she was uncomfortable around Isenberg. (Schneider 90:2-7.)

**B. Schneider's February 20, 2020 Complaint.**

On Thursday, February 20, 2020, Schneider texted her supervisor, Delgado, and asked "Is there any way I can speak with you sometime today?" (DX D; Schneider 71:22-72:9; 73:2-5.) Delgado replied, "Yes." According to Schneider, she and her husband met with Delgado that same afternoon behind closed doors. (Schneider 73:23-74:4.) "During our meeting in her office," Schneider testified, "I informed her about what it was about, another co-worker and being sexually harassed, yes." (Schneider 77:21-23.) Schneider says that she went into detail about several of her allegations. (Schneider 79:16-80:17.) Schneider finally reported the alleged harassment because "[i]t wasn't going to stop until I said something." (Schneider 90:21-22.) At the end of their meeting, Delgado asked Schneider to prepare a written statement that she could share with executive director, Herman Breuer. (Delgado 110:24-111:4; Schneider 102:12-18; 100:20-25; 102:10-15.)

Late that same night, Schneider texted Delgado about a furnace problem and asked to take a personal day on Friday, February 21, 2020. Delgado granted her the time off. The text chain continued:

> Delgado: "Herm is going to be off until next Thursday. Do you want me to just let Herm know and have him talk to Mark without the paper [written statement][?] I don't think we should wait[.]
>
> Schneider: YES! Please tell him and I'll have my statement done for you by Monday.

> Delgado: Ok. I hope your [*sic*] comfortable with how we are handling this. If you feel in any way that you are threatened please let me know. I know Mark will be scared, it will end today.

(DX D.) By the time of the texts, however, Delgado already had spoken with Breuer to tell him "we have a complaint. We have a problem." (Delgado 113: 7-18, 116:20-21; Breuer 56:23-57:4.)

Breuer had been scheduled to travel to Washington D.C. from Friday, February 21-27, 2020. Breuer delayed his departure by a day so he could be in the office to confront Isenberg. (Breuer 65:1-14; Delgado 116:3-14, 118:21-22.) As this was the first sexual harassment complaint Breuer had ever received, he contacted the county HR department for guidance.[2] Unfortunately, the HR director was out of the office. (Delgado 122:2-7.) Unwilling to leave the issue unaddressed for another week, Breuer met with Isenberg on February 21, 2020 and told him that Schneider had complained that he was making her uncomfortable. (Breuer 72:3-5.) Breuer told Isenberg, "it stops now." He issued Isenberg a written reprimand and told him to stay away from Schneider. (PX 2; Breuer 67:1-9; 71:5-15.) Breuer told Isenberg they would talk again when Breuer returned from D.C.

While in D.C., Breuer received a call from Delgado, who had received Schneider's written complaint. (Breuer 73:3-10.) Delgado read Breuer the entire statement over the phone. (DX E.) Breuer was shocked at some of the allegations. (Breuer 73:12-14.) Breuer told Delgado to offer Schneider paid leave until he returned and they could discuss the matter with the county's HR director. (Breuer 73:15-74:4.)

---

[2] Breuer typically performed the HR function for TCVSC. (Breuer 21:12-14.) The county HR department has no right of control over TCVSC employees because the county is not their appointing authority; however, if Breuer had "a question on discipline, [he] would typically refer to the county human resources or the county prosecutor." (Breuer 25:9-11.) The HR department is a resource available to TCVSC. (Delgado 123:14-20.)

On Thursday, February 27, 2020, Breuer returned to the office. (Breuer 74:3-4.) He and Delgado sat down with Schneider and asked what she would like to happen. (Breuer 74:8-16.) Schneider told Breuer that she wanted her allegations to remain confidential. (Breuer 77:13-25.) She did not want her allegations shared with Isenberg. (Breuer 76:7-8.) She did not want Isenberg fired. She did not want an investigation. She just wanted the harassment to stop. (Breuer 74:16-75:2.)

After finishing their meeting with Schneider, Breuer and Delgado went to meet with the county HR director, Richard Jackson. (Breuer 75:3-6.) Initially, Breuer was reluctant to share Schneider's statement with Jackson because Schneider wanted confidentiality, but Breuer relented. (Breuer 75:6-8.) Jackson reviewed the statement and upon hearing that their jobs did not require them to interact face-to-face, advised Breuer to tell Isenberg and Schneider to "go back to work and knock it off." [3] (Breuer 75:13-22.) When they returned to the office, Delgado and Breuer met with Isenberg and Schneider together. Breuer told them to have no contact with each other. (Breuer 75:23-76:2; Delgado 119:11-22.) Breuer also told them that he would be discussing the allegations with the VSC board that same morning to determine how they wanted him to proceed.

In executive session, Breuer read Schneider's statement to the VSC board, explained that he had issued Isenberg a written reprimand before leaving for D.C., that he had discussed the complaint with county HR and that he had implemented HR's recommended solution. (Breuer 70:8-15; 76:9-14.) The VSC board was satisfied with the action taken. (Delgado 191:21-24.) Even Schneider admits that the reprimand was effective. The alleged harassment stopped. (Schneider 209:9-18.)

[3] Breuer informed Jackson of his and Delgado's observations that Schneider spent a lot of time in Isenberg's office. (Breuer 58:1-10; Delgado 93:24-2, 100:15-101:3, 103:4-7.)

### C. Schneider's May 7, 2020 Layoff.

By mid-March 2020, COVID-19 was shutting down the country. TCVSC closed its office effective Monday, March 23, 2020. (Exhibit A -- Breuer Aff. ¶ 3.) From March 20, 2020 through April 12, 2020, Schneider stayed home, did no work and received full pay. (Exhibit A, ¶ 4.) Starting April 13, 2020, Schneider worked three hours a day at the office and received full pay. (Exhibit A, ¶ 4.) Following the onset of COVID, work at TCVSC decreased significantly. (Breuer 108:7-22.) On May 7, 2020, TCVSC laid off Schneider due to lack of work. (DX G; Schneider 95:7-10; Breuer 117:20-118:5.)

Plaintiff admitted that "work was slow" during COVID and she agreed that TCVSC did not need three administrative employees. (Schneider 203:1-6.) She also admitted that she was the least senior of the three administrative employees and that she understood why she was laid off. (Schneider 203:21-25; 205:18-206:3.) Plaintiff's position was abolished in September 2021. (Exhibit A, ¶ 6.) As of September 2022, the workload at TCVSC still had not returned to pre-COVID levels. (Breuer 112:21-113:1.)

## III. STANDARD OF REVIEW

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient;

there must be evidence on which the jury could reasonably find for the plaintiff." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although a court must construe facts in favor of the non-moving party, courts need not accept, wholesale, any version of facts alleged in a complaint. A court must view facts in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting Rule 56(c)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. That is the case here.

## IV. LAW AND ARGUMENT

### A. TCVSC Is Not a Covered Employer under Title VII, So Plaintiff's Title VII Claims Must be Dismissed.

In order to be subject to liability under Title VII, the defendant must meet the statutory definition of an "employer." According to 42 U.S.C. § 2000e(b), an "employer" must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." TCVSC did not meet this definition. TCVSC had fewer than fifteen employees at all times during 2018, 2019 and 2020. (Exhibit A, ¶ 5.) *See Walters v. Metropolitan Educ. Enterprises, Inc.*, 519 U.S. 202, 205 (1997) (observing that the "current or preceding calendar year" as used in Title VII means the year in which the alleged violation(s) occurred and the preceding calendar year).

Contrary to Plaintiff's anticipated assertion, the five TCVSC commissioners are not employees of TCVSC. Collectively the commissioners comprise the employer. TCVSC has no authority to hire or fire one of its commission members. The commissioners are appointed to their terms by a common pleas judge. R.C. § 5901.02. Only a judge can remove a commissioner and

only for good cause. R.C. § 5901.03. TCVSC does not "supervise" the commissioners, and there is no one higher in the organization than the commission. Commissioners do not simply influence the organization, they control it. *See* R.C. § 5901.02-.03. As a body, the commissioners employ staff and fix their compensation; establish policies and procedures for the administration of the commission and the veterans service office; establish policies and procedures for the administration of financial and claims assistance, and fulfill various other statutory duties. *See* R.C. § 5901.03, § 5901.06, § 5901.07. Commissioners are not TCVSC employees. In fact, R.C. § 5901.02 prohibits the appointment of a person who is an employee of the commission or holds an elective or appointive office of the county served by the commission. *See also,* R.C. § 5901.07 ("No county commissioner or member of the veterans service commission shall be employed as a service officer.")

Plaintiff is also expected to argue that TCVSC should be considered a single employer with Trumbull County for purposes of employee-numerosity. This argument also fails because as a matter of law Trumbull County had no control over the manner and means of Plaintiff's work. *Nelson v. Clermont Cnty. Veterans' Serv. Comm'n*, No. 1:11-CV-335-HJW, 2012 WL 893877 (S.D. Ohio Mar. 15, 2012).

In *Nelson,* a federal district court rejected the same argument as it related to the Clermont County VSC. Although Nelson alleged that that "[e]mployees of the VSC are treated as employees of Clermont County, are subject to the Clermont County Board of Commissioners Policy and Procedural [sic] Manual, and receive their payroll checks from the Clermont County Auditor," the district court held that the allegations were insufficient as a matter of law to demonstrate an employment relationship. .

> Plaintiff does not allege that the Board [of County Commissioners] supervised VSC employees' day to day activities, hired or fired VSC employees, controlled VSC

> work assignments, issued instructions to the VSC, or conducted any other activities commonly performed by employers. **By state law, the Board has no authority under Ohio law to do any of these things for VSC employees**. See *Satterfield v. Tennessee,* 295 F.3d 611, 617 (observing that in evaluating the overall relationship, the "most important factor" was "the employer's ability to control job performance and employment opportunities of the aggrieved individual").

*Id.* at *4 (bold added).

For all of these reasons, TCVSC is entitled to summary judgment on Schneider's Title VII claims for sexual harassment and retaliation. *See Satterwhite v. Ashtabula Cnty. Metroparks*, 514 F. Supp. 3d 1014 (N.D. Ohio 2021) (rejecting attempt to aggregate Ashtabula County employees with Ashtabula County Metroparks employees in order to meet Title VII's numerosity requirement, and granting summary judgment to Ashtabula County Metroparks because it was not a covered employer).

### B. Even if TCVSC was a Covered Employer under Title VII, TCVSC is Not Liable under Federal or State Law for the Alleged Sexual Harassment.

To prevail on her hostile-work-environment sexual harassment claim, Schneider must show 1) she is a member of a protected class, 2) she experienced unwelcome sexual harassment, 3) the harassment was based on sex, 4) the harassment created a hostile work environment, and 5) her employer is liable. *Doe v. City of Detroit, Mich.*, 3 F.4th 294, 300 (6th Cir. 2021).[4] For purposes of this motion only, TCVSC will assume, *arguendo*, that Schneider can meet the first four prongs of the test. Regardless, Schneider cannot meet the fifth prong, which requires her to show that TCVSC is liable.

---

[4] "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt., v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981). Accordingly, Plaintiff's state and federal claims will be analyzed together.

Two cases decided by the Supreme Court in 1998 define the conditions under which employers can be held liable to employees who are sexually harassed. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. Boca Raton,* 524 U.S. 775 (1998). An employer's liability depends on the status of the harasser. If the harasser is the employee's supervisor [5] and he causes the employee to suffer a tangible job detriment because she refuses his advances, then the employer is strictly liable for the harassment because the harasser wielded the power of the employer in furtherance of the harassment. *Id.* If the harasser is the employee's supervisor but the employee did not suffer a tangible job detriment, then the employer is vicariously liable for the harassment, subject to an affirmative defense that "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

If, as here, the alleged harasser was not the employee's supervisor, but merely a co-worker, then the employer is neither strictly liable nor vicariously liable. *Garcia v. Beaumont Health Royal Oak Hosp.*, No. 22-1186, 2022 WL 5434558, at *3 (6th Cir. Oct. 7, 2022). "For a plaintiff to hold an employer liable for the harassing conduct of an employee's co-workers, the plaintiff must show that the employer's response to the plaintiff's complaints manifested indifference or unreasonableness in light of the facts the employer knew or should have known." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 417 (6th Cir. 2021).

---

[5] "[A]n employee is a "supervisor" for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.,* 570 U.S. 421, 424 (2013). Isenberg had no authority over Schneider.

**1. TCVSC Is Not Liable because It Did Not Know, and Had No Reason to Know, of the Alleged Harassment until February 20, 2020.**

Here, the fact is undisputed that TCVSC did not know or have reason to know of any alleged harassment until Schneider's February 20, 2020 report to Delgado. Schneider did not confide in her co-workers about the alleged harassment. (Schneider 87:14-17; 89:24-90:3; 90:4-7.) There is no evidence that anyone heard or saw anything that she alleges Isenberg said or did to her. (Schneider 116:5-6; 119:17-19; 129:14-17; 133:22-134:1; Delgado 97:11-22.) Schneider admits she "kept [it] hidden" from her employer. (Schneider 105:23-106:4; DX E – "I'm now making my employer Trumbull County Veteran Services aware of the sexual harassment that I'm being faced with everyday during work. * * * Nearly months now I have been in fear of embarrassment of speaking out and now am ready to expose the incidents of sexual harassment, I've kept hidden.") [6] Clearly, TCVSC had no responsibility to act prior to Schneider's report.

[6] Isenberg allegedly invited Schneider to come to work early to "fool around." Schneider replied, "what would the boss, Herm, and wifey say?" (135:5-25.) According to Schneider, Mark just laughed and said, "Herm knows." (Schneider 135:14-136:7.) Schneider admits that she has no evidence, save for this alleged comment, that Breuer did know about the alleged harassment. (Schneider 138:18-22.) Thus, Schneider is offering the statement for its truth -- not just to prove that Isenberg made the statement, but to prove that Breuer knew about the alleged harassment. A similar evidentiary issue was addressed in *Brooks v. S.C. Dep't of Corr.*, No. CV21800721TMCMGB, 2020 WL 4678966, at *12 (D.S.C. Apr. 13, 2020), *report and recommendation adopted*, No. 2:18-CV-721-TMC, 2020 WL 3097356 (D.S.C. June 9, 2020). In *Brooks*, the plaintiff prisoner brought a Section 1983 claim against a prison for allegedly failing to protect him from other inmates. The prisoner testified that he told a corrections officer before his assault to notify the warden that he should be separated from two other inmates for safety reasons. According to the prisoner, the CO replied that the warden already knew he needed to be moved and would take care of it. The court observed, "Plaintiff is attempting to introduce evidence of Davis' out of court statements (that Davis spoke with Lewis and that Lewis already knew about the need for separation) for the truth that Lewis already knew about Plaintiff's need for separation at Perry prior to the incidents at issue. Accordingly, the undersigned finds that these statements are offered for the truth of the matter asserted and therefore constitute hearsay.") The same holds true here.

**2. TCVSC's Response was Reasonable Per Se because it Ended the Alleged Harassment.**

An employer's response "'is adequate if it is reasonably calculated to end the harassment.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)). If an employer's response did, in fact, end the harassment, then the inquiry ends. The employer is not liable. *Garcia v. Beaumont Health Royal Oak Hosp.,* No. 22-1186, 2022 WL 5434558, at *6 (6th Cir. Oct. 7, 2022) (recognizing that the court has implied in several cases that an employer response that *does* end harassment precludes liability). *See also*, *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 51 (6th Cir. 1996) (where reprimand of co-worker ended the alleged harassment, the company "relieve[d] itself of liability."); *Doe v. City of Detroit, MI*, 3 F.4th 295, 304 (6th Cir. 2021) (employer not liable because it relocated and disciplined alleged harasser which ended the harassment.); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (employer not liable because its response was "not only reasonable but effective in ending the sexual harassment"); *Gwen v. Reg'l Transit Auth.*, 7 F. App'x 496, 501-502 (6th Cir. 2001) (employer not liable because it suspended harasser and no further harassment occurred).

Plaintiff admits that TCVSC's response ended her alleged harassment.[7] (ECF No. 25; Schneider 209:9-18.) Consequently, TCVSC's response was reasonable as a matter of law and TCVSC is entitled to summary judgment.

---

[7] Schneider acknowledged that she received and read TCVSC's sexual harassment policy when she started the job. (ECF No. 25; DX I.) She also admitted that she did not need a policy to tell her that she should report harassment to her supervisor. (Schneider 216:21-217:3.)

### C. Even if TCVSC was a Covered Employer under Title VII, TCVSC is Not Liable under Federal or State Law for Retaliation because there is No Causal Connection between Plaintiff's Harassment Complaint and her Layoff.

Schneider has no direct evidence of retaliation, so we must analyze her claim through the burden-shifting framework provided in *McDonnell Douglas*. *Strickland v. City of Detroit*, 995 F.3d 495, 510 (6th Cir. 2021). If Schneider makes out a prima facie case of retaliation, then TCVSC must "'articulate some legitimate, non-discriminatory reason for its actions.'" *Id.* (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). At that point, Schneider must prove that the proffered reason was a pretext for retaliation. *Id.*

In order to make out a prima facie case of retaliation, Schneider must show that: (1) she engaged in protected activity; (2) TCVSC knew that she engaged in protected activity; (3) TCVS subsequently took an adverse action against her; and (4) the protected activity and the adverse action were causally connected. *Randolph v. Ohio Dep't of Youth Services*, 453 F.3d 724, 726 (6th Cir. 2006). TCVSC will assume, *arguendo*, that Schneider can satisfy the first three prongs of the test. Nevertheless, her retaliation claim fails as a matter of law on the fourth prong because she has no evidence that her layoff was causally connected to her harassment complaint.

Plaintiff admitted in deposition that there was very little work to be done during COVID. She agreed that TCVSC did not need three administrative employees. She admitted that she was the least senior of the three administrative employees and that she understood why she was laid off. Schneider's only grounds for alleging retaliation is the proximity of her layoff (May 7, 2020) in relation to her complaint (February 20, 2020).

Proximity alone can create evidence of a causal connection, but those circumstances are the exception rather than the rule.

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

> significant enough to constitute evidence of a causal connection.... But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co*., 516 F.3d 525 (6th Cir. 2008) (citation omitted) (proximity alone sufficed to establish prima facie case of retaliation because employee was terminated on the same day employer learned of protected activity)..

Two and a half months elapsed between Schneider's complaint and her layoff. Typically, a gap of no more than three months is a short enough time period to raise an inference of causal connection. *Wormald v. Overhead Door Corp.*, No. 5:21-CV-00585, 2022 WL 7579793, at *5 (N.D. Ohio Oct. 13, 2022). **But these three months were anything but typical.** Between Schneider's complaint and her layoff, a global pandemic shut down the world. Businesses in the U.S. shut their doors to the public and laid off employees in record numbers. (ECF No. 25.) "In March [2020], nonfarm employment fell by 1.7 million, a loss only surpassed by a 1945 employment decline that came as the country demobilized after World War II. … In April, employment plummeted, dropping by 20.7 million—the largest decline in the history of the CES employment series, which originated in 1939." https://www.bls.gov/opub/mlr/2021/article/covid-19-ends-longest-employment-expansion-in-ces-history.htm (last visited 11/10/22).

Schneider did not report to the office or perform any work between March 20, 2020 and April 13, 2020. Yet TCVSC continued to pay her in full each week. From April 13, 2020 to May 7, 2020, Schneider worked three hours a day and received full-time pay. (Exhibit A, ¶ 4.) On May 7, 2020, Breuer met with Schneider and handed her a letter that read, in pertinent part:

> The Global Crisis known as COVID 19 has altered and interrupted our daily operations in such a way, that much about the future of our services is uncertain, at this time. * * * As of today it is clear that the new normal will alter the volume of calls, and the traffic for our office in ways like never before. * * * We have determined that our staffing requirements in the immediate future will not require 3 employees in the Administrative Staff. In order to continue being mindful

> stewards of the taxpayers['] dollars of this county, it has become necessary to make adjustments. As a direct result of a lack of work due to COVID 19 effective 4:30 P.M. EST May 7th, 2020, you are hereby laid off. * * *

(DX G.)

Under normal circumstances, proximity alone might suffice to make out a prima facie case of retaliation. But these were not normal circumstances. Schneider's layoff occurred against the backdrop of a global pandemic. On March 13, 2020, President Trump declared a national emergency. The U.S. Supreme Court postponed oral arguments for just the second time in 225 years. https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_03-16-20 (visited 11/10/2022); https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_04-03-20 (visited 11/10/2022). Job losses were unprecedented – to the point that the federal government stepped in to extend and enhance unemployment benefits available through the state.[8]

TCVSC had the perfect opportunity to lay off Schneider, the office receptionist, when the building closed on March 23, 2020. Instead, TCVSC kept her on payroll for another six weeks while she did virtually no work. On these undisputed facts, Schneider's prima facie case of retaliation fails as a matter of law.

Even if the Court disagrees and concludes that Schneider can make out a prima facie case of retaliation based on proximity alone, the admitted lack of work and uncertainty caused by COVID 19 constituted a legitimate, non-retaliatory reason for laying her off. Thus, the burden shifts back to Schneider to show that TCVSC's reason for laying her off (*i.e.,* lack of work) was a pretext for retaliation. This she cannot do because Schneider admitted in deposition that "work

---

[8] Schneider made more on unemployment than she did by working. Schneider earned $26,000/year working for TCVSC. (Breuer 124:21-125:17; Schneider 214:3-7.) In 2020, she worked at TCVSC for just four months and reported $28,000 in income. (Exhibit B.) Schneider received $15,565 in unemployment benefits for the first eight months of 2021. (Exhibit C.)

was slow" during COVID; that TCVSC did not need three administrative employees; that she was the least senior of the three administrative employees and that she understood why she was selected for layoff. (Schneider 203:1-6. 21-25; 205:18-206:3.) Neither did TCVSC replace Schneider. In fact, TCVSC abolished the administrative coordinator position in September 2021 and distributed its duties among existing employees. (Breuer 150:21-151:9).

## V. CONCLUSION

For the reasons set forth above, TCVSC respectfully requests that the Court grant summary judgment in its favor on the entirety of Schneider's complaint.

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Kathleen M. Minahan*
KATHLEEN M. MINAHAN (0064989)
EDMOND Z. JABER (0096355)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: kminahan@mrrlaw.com
ejaber@mrrlaw.com

*Counsel for Defendant Trumbull County Veterans Service Commission*