UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE SCHNEIDER, | ) | CASE NO. 4:22-CV-00126-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| TRUMBULL COUNTY VETERANS | ) | |
| SERVICE COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

/s/ *Daniel S. Dubow*
Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES TO BE DECIDED ...................................................... vi

MEMORANDUM IN OPPOSITION ...................................................................... 1

I.    SUMMARY OF ARGUMENTS ...................................................................... 1

II.   STATEMENT OF FACTS ............................................................................... 2

  A.  VSO Employed Schneider Without Incident Until She Complained About Sexual Harassment. ................................................................................... 2

  B.  Breuer And Isenberg's Conduct Dissuaded Complaints. ............................ 3

  C.  Schneider Reported Suffering From Sexual Harassment. ........................... 3

  D.  VSO Failed To Take Prompt Remedial Action Following Schneider's Complaint of Sexual Harassment. ............................................................... 5

  E.  VSO Laid Off Schneider Under The Guise Of The COVID-19 Pandemic. .. 7

III.  SUMMARY JUDGMENT STANDARD .......................................................... 8

IV.   GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER VSO IS AN "EMPLOYER" UNDER TITLE VII. ....................................................... 9

V.    GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO SCHNEIDER'S SEXUAL HARASSMENT CLAIMS (COUNTS I & II) ............................... 12

  A.  Schneider Established Her *Prima Facie* Case for Sexual Harassment. ........... 12

  B.  VSO Knew Or Should Have Known Of The Sexual Harassment And Failed To Take Prompt And Remedial Action. ........................................... 13

    i.   VSO Knew Or Should Have Known Of The Sexual Harassment. ........... 13

    ii.  VSO Failed To Take Prompt And Remedial Action. ............................. 13

VI.   GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO SCHNEIDER'S RETALIATION CLAIMS (COUNTS V & VI). .......................... 16

VII.  QUESTIONS OF FACT REMAIN REGARDING VSO'S PRETEXTUAL REASON FOR TERMINATING SCHNEIDER'S EMPLOYMENT. ................. 18

VIII. CONCLUSION ............................................................................................. 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f) ........................ 21

CERTIFICATE OF SERVICE .............................................................................. 21

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986) ........................................8,9

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ...............................................................9

*Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006) ..........................................................17

*Berenda v. Buzek, Kiplinger & Associates*, 2002-Ohio-44, 2002 WL
    68374 (8th Dist. 2002) ......................................................................18

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) ...............................................14

*Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003) ..............................................12

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 (1986) .............................................8

*Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579 (6th Cir. 2002).........................................17

*Denton v. Safeguard Properties, LLC*, 1:16-cv-00134, 2017 WL 3971635
    (N.D. Ohio, 2017) ..........................................................................17

*DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) ...........................................................17

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007) ..........................................................16

*Ellis v. Jungle Jim's Market, Inc.*, 44 N.E.3d 1034 (12th Dist. 2015) ...........................14, 15, 16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...................................................14, 15

*Garcia v. Beaumont Health Royal Hospital* No. 22-1186, 2022 WL
    5434558 (6th Cir. Oct. 7, 2022) ...........................................................16

*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007 Ohio 6442, 879 N.E.2d
    174 (Ohio 2007)............................................................................16

*Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169 (Ohio
    2000) .......................................................................................12

*Hancock v. Dodson,* 958 F.2d 1367 (6th Cir. 1992) ......................................................9

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) ............................................19

*Kasprzak v. DaimlerChrysler Corp.*, 431 F.Supp.2d 779 (N.D. Ohio 2006) ..............................14

*Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178 (6th Cir. 1992) ..........................9, 11

*Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1985) ...............................................19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) ..................................17

*Moon v. Transport Drivers, Inc.*, 836 F.2d 226 (6th Cir. 1987).......................................17

*Nelson v. Clermont Cnty. Veterans' Serv. Comm'n* No. 1:11-CV-335-HJW,
    2012 WL 893877 (S.D. Ohio Mar. 15, 2012) ..........................................................11

*Nicholson v. City of Clarksville, Tenn.*, 530 App'x 434 (6th Cir.2007) ........................... vi, 17, 18

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) ........................................ vi, 16, 17, 18

*Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 89, 630 N.E.2d 669
    (Ohio 1994)...........................................................................................12

*Parnell v. West*, 114 F.3d 1188, 1997 WL 271751 (6th Cir. 1997).........................................17, 18

*Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989) .................................................9, 10

*Provenzano v. LCI Holdings, Inc.*, 663 F. 3d 724 (6th Cir. 2006) .................................17

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006).......................................18

*Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed.Appx. 587
    (6th Cir. 2009) ....................................................................................12

*Satterwhite v. Ashtabula Cnty. Metroparks*, 514 F.Supp.3d 1014
    (N.D. Ohio 2021) ..................................................................................11

*Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121 (6th Cir. 1998) .........................19

*Sharp v. Aker Plant Servs. Grp., Inc.*, 600 F.App'x 337 (6th Cir. 2015) ......................18

*Shields v. Federal Exp. Customer Information Services Inc.*, 499 Fed.Apx.
    473 (6th Cir. 2012) ..............................................................................14, 16

*Singfield v. Akron Metro. Hous. Authority*, 389 F.3d 555 (6th Cir. 2004) ....................19

*United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103
    S. Ct. 1478, 75 L. Ed. 2d 403 (1983)..............................................................19

*Vogt v. Total Renal Care, Inc.*, No 103102, 2016 WL 3766074
    (8th Dist. 2016).....................................................................................17

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013) ...................................................15

*Wholf v. Tremco, Inc.*, 26 N.E.3d 902 (8th Dist. 2015)...................................................................17

*White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232
(6th Cir. 2005)................................................................................................................................17

## STATUTES, CODES, AND REGULATIONS

Title VII of the Civil Rights Act of 1964 ........................................................... 1, 2, 9, 10, 12

42 U.S.C. § 2000e(b) ..............................................................................................................9

42 U.S.C. § 2000e(f) ..............................................................................................................9

R.C. § 124.01(A) .....................................................................................................................9

R.C. §§ 5901.02, .07 .............................................................................................................11

R.C. § 4112. ...........................................................................................................................20

## **STATEMENT OF ISSUES TO BE DECIDED**

1. When Trumbull County and VSO's workers considered themselves as employees of the County, and when the VSO Commissioners exercised significant control over Schneider's firing and conditions of employment, is there at least a dispute of fact that VSO had 15 or more employees during the relevant timeframe?

2. When Schneider complained about sexual harassment in writing detailing the extensive and egregious sexual harassment of a senior male employee, has she established a dispute of fact as to her sexual harassment claim when VSO admittedly did not conduct an investigation in contravention of their own sexual harassment policy?

3. When binding precedence from the United States Sixth Circuit Court of Appeals has held that temporal proximity alone satisfies a prima facie case of retaliation when the individual is fired within six months of protected activity (*see Nicholson v. City of Clarksville, Tenn.*, 530 App'x 434, 447 (6th Cir. 2007); *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000)), has Schneider established a prima facie case of retaliation when she was laid off two and a half months after her complaint of sexual harassment, and when VSO did not consider laying off individuals who had not made protected complaints?

4. When VSO claims that it laid off Schneider due to a lack of work and due to a request to reduce its budget by 10%, has Schneider presented a dispute of fact that this decision was pretext for retaliation when VSO did not consider laying off unnecessary workers who earned at least three times as much as Schneider?

## I.   SUMMARY OF ARGUMENTS

On February 21, 2020, Adrienne Schneider submitted a written complaint of sexual harassment to Trumbull County Veterans Service Commission (VSO) Director Herman Breur and Deputy Director Cari Delgado regarding Senior Service Officer Mark Isenberg. The complaint included sexual propositions, physical touching, countless sexual statements, including around other employees, and sexual comments about Schneider's minor daughters. Despite VSO having a detailed sexual harassment policy requiring a thorough investigation, VSO did not interview anyone. VSO slapped Isenberg on the hand with a minor write up *before* receiving the detailed complaint, and did not even advise Isenberg that the complaint against him was sexual in nature. Then, two and a half months later, VSO laid off Schneider under the guise of lack of work and budget deficits due to the COVID-19 pandemic. Although Trumbull County requested VSO to cut its budget by 10%, VSO did not consider laying off Isenberg who made three times as much as Schneider, when VSO did not need that many service officers. More, when there was virtually no foot traffic at VSO, VSO also did not terminate its security detail which was similarly expensive.

Finally, there should be at least a dispute of fact to go to a jury on whether VSO is an "employer" under Title VII. VSO's 30(b)(6) witness from the Human Resource Department confirmed that VSO workers are considered employees of the County, and even Delgado and Breuer made comments suggesting the same. Even if this were not enough, VSO employed 16 employees at the time of the adverse actions as the Commissioners count as employees of VSO when they exercised significant control over Schneider's firing and conditions of employment and had job descriptions themselves. More, the security detail from the Sheriff's Office also counts as an employee as VSO jointly employed him with the Sheriff's Office as VSO controlled his duties.

For the forgoing reasons, and in viewing all the facts in a light most favorable to Schneider, summary judgment should be denied because VSO has failed to meet its initial burden under

1

Civ.R. 56(C), and genuine issues of material fact remain as to each element of Schneider's claims for sexual harassment and retaliation.  Alternatively, should the Court determine that VSO is not an "employer" under Title VII, Schneider requests that this Honorable Court decline to exercise supplemental jurisdiction over her state law claims, and dismiss her claims without prejudice.

## II.    STATEMENT OF FACTS

### A.  VSO Employed Schneider Without Incident Until She Complained About Sexual Harassment.

VSO hired Schneider on March 11, 2019, and employer her as its Office Administrator. Doc # 28, Schneider Deposition, 49:4-5.  The position was secretarial, where she worked the front desk of the office, answered phones, and greeted customers. *Id*. at 15:11-15. She had to communicate with the Service Officers to let them know if their appointment was at the office, brought the Service Officers documents to be certified, and asked questions for advice on issues. *Id*. at 23:21-24:1-7. Isenberg was a Senior Service Officer at the time. *Id*. at 23:11-19. During her employment, she reported up to Delgado. Doc # 29, Delgado Deposition, 33:3-8. Schneider also reported up to Breuer. Doc # 30, Breuer Deposition, 19:11-17. Ultimately, all of the employees of VSO reported up to the Board of Commissioners, who are "responsible for the overall operation of the Veterans Service office and its employees," and were also the sole individuals who were permitted to make the determination as to hiring and firing. Ex. 36.[1] Breuer Dep., 27:10-19.

Prior to Schneider complaining about sexual harassment on February 21, 2020, VSO had not issued Schneider any discipline. Breuer Dep., 54:24-55:1-2. VSO also had no intent to terminate Schneider's employment prior to February 21, 2020. *Id*. at 55:3-6.

---

[1] Plaintiff used continuously numbered exhibits during her depositions. Not all exhibits used during her depositions are cited herein. Exhibits referred to as "Ex." herein were used and authenticated during Plaintiff's depositions.

**B.  Breuer And Isenberg's Conduct Dissuaded Complaints.**

On January 13, 2020, Breuer sent a text message to a group chat including employees of VSO, where he shared an image of a neon sign from a bar, and said, "Look everybody it's Adrienne's kinda place in Atlanta!" Ex. 1, at Schneider 143. Isenberg responded, "I'm reporting this to HR." *Id*. at Schneider 144. Breuer then replied, "Good luck HB is HR." *Id*. It was understood that with VSO being a small office, that Breuer was technically their human resources and would make final recommendations as to discipline. Breuer Dep., 63:5-10. Breuer himself agreed that this was not an appropriate text message exchange. *Id*. at 63:12-17. Delgado also found this text exchange inappropriate. Delgado Dep., 107:19-23. Breuer was not disciplined for these texts.

Schneider viewed Isenberg and Breuer as best friends. Schneider 92:21-22. Schneider also viewed Delgado and Breuer as being close friends. *Id*. at 91:24-25. Isenberg himself views him and Breuer as friends. Isenberg Deposition, at 52:25-53:2. Isenberg and Breuer in fact spend time with one another frequently outside of work, whether it is attending sporting events, or through a country club that they both belong to. *Id*. at 51:18-52:24. This in large part dissuaded Schneider from initially reporting the harassment as she did not think that Delgado or Breuer would believe her. Schneider Dep., 93:21-24.

**C.  Schneider Reported Suffering From Sexual Harassment.**

Schneider first recalled Isenberg sexually harassing her at a gala in July 2019 attended by VSO employees. Schneider Dep., 51:4-52:1-5. During the gala, Schneider overheard an individual named Danny White say to Isenberg, "oh, now I know why you were up-talking [Schneider]," referring to her appearance. *Id*. at 53:25-54-14. After the gala, Isenberg told Schneider that "his wife caught him looking at me." *Id*. at 50:4-7.

As the sexual harassment continued unabated from that point, Schneider decided to complain to Delgado on February 20, 2020. Ex. 16. Schneider Dep., 73:21-24. After sending the

3

text message asking Delgado if the two could speak, they met and Schneider reported the sexual harassment that had been occurring. Schneider Dep., 73:21-24. During the meeting:

> I remember telling her about the sticky notes that he would write sexual gestures on or comments. I told her that he had asked me to send nude photos to his phone. I also told her that he had an erection underneath his desk that he made me aware of. I had advised her of the finger puppet, coming into my office space and telling me that he had spoke with his therapist and that he wasn't able to touch me, but only with his finger puppet, he could. … I believe that I told her about the gala and that he had been watching me at the gala. [Schneider Dep. 79:18-80:6].

Schneider also reported incidents that occurred at the VFW bar around Thanksgiving and Christmas. In the parking lot of the bar, Isenberg said to Schneider, while fellow Service Officers Chuck Ciapala and Chris Buydos were present, "we know your bird's been stuffed six times." *Id.* at 80:24-81:6. Then around Christmas at the VFW bar, Isenberg rubbed Schneider's thigh, while Schneider was sitting next to Gary Gutelius, the President of the Commissioners at the time. *Id.* at 83:3-25. He gave her "a nice rub on the thigh, and then he asked me to meet him outside for a kiss in the parking lot." *Id.* at 84:14-16. In addition to this, there was another instance where Isenberg grabbed Schneider's hand and kissed it. *Id.* at 85:14-18.

After the meeting, Delgado advised Schneider that Delgado would bring the complaint to Breuer's attention. *Id.* at 100:15-101:3. Delgado also requested Schneider to provide a written statement of her complaint. *Id.* at 102:10-22. Schneider completed and turned in a four-page, single-spaced written complaint detailing the sexual harassment that she suffered. Ex. 3. Although the entirety is attached hereto, some of Isenberg's conduct bears highlighting:

> [H]e said "If something were to happen to my wife and your significant other could we be together?".. I've been approached many times with "you look very nice today, and your [*sic*] so f****** hot!"… He came to me and told me in private "He loves me", "he thinks he's falling in love with me." I've replied to him NO you couldn't be, NO you're not! … Being told on several occasions "I haven't sexually harassed you today." I've also been asked if he could buy me "something nice" aka lingerie to slip into… asked that I meet him at the home he was selling. I've been told on several occasions that he was going to kiss me today or try to… I've also been told.. "my [minor] daughters have nice asses, too!" I've been told by him that he has an "erection" under his desk along with telling me how he keeps himself groomed and

> that it helps with the look and size of his penis. He's told me to shut the door and we can do it on his desk, or maybe somewhere like the community room where no one is… He has told me that he wants to make me "his sex slave". He's also said he would keep me locked up in a box in his basement in front of another employee (Tommy D) while laughing… He approached me and asked me if "I thought that people in the office noticed if he had the thing for me", I replied "ah yeah!" [Ex. 3].

The written complaint noted that other employees in the office were aware of Isenberg's sexual harassment, yet VSO failed to take action. This included reporting that she asked Isenberg what Breuer would think about his sexual harassment, and he responded, "Herm knows!" Ex. 2, at TCVS 3. Schneider also disclosed that Ciapala egged on Isenberg to keep sexually harassing Schneider as she was not legally married yet. *Id.* at TCVS 3. She also included that other co-workers have commented as to Isenberg's sexually harassing comments. *Id.*

More, the written complaint detailed that Isenberg's harassment caused her "great depression, pain, agony and havoc on myself and my life." *Id.* Schneider specifically wrote: "I am in fear of what the outcome of all this will become. Will his actions become more violent? … In fear of being judged and or sexually harassed in the most extreme ways possible." *Id.*

### D. VSO Failed To Take Prompt Remedial Action Following Schneider's Complaint of Sexual Harassment.

After receiving a complaint of sexual harassment, VSO's policy required VSO to "conduct a thorough and confidential investigation to determine the validity of the allegation." Ex. 9. The policy, modeled after Trumbull County's policy, required that the alleged harasser and witnesses be interviewed. Charles Dep., 58:12-59:5. Then, the "Supervisor will report findings to the employee and the Appointing Authority within three (3) workdays if at all possible." Ex. 9.

Delgado thought Schneider believed she was being harassed and "partially" believed her allegations. Delgado Dep., 112:19-113:4. After receiving the complaint, Delgado advised Breuer of the complaint, its serious nature, and that it needed to be handled immediately. *Id.* at 116:19-24. Breuer found the allegations raised in Schneider's complaint to be serious. Breur Dep., 87:1-

5. Breuer then issued Isenberg a written discipline early on February 21. Delgado Dep., 118:20-119:4. Ex. 2. No one obtained a statement, written or otherwise, from Isenberg. Delgado Dep., 119:5-10. Breuer Dep., 70:21-25. Isenberg Dep., 75:9-23, 76:3-8. In fact, at the time that Breuer issued Isenberg the discipline, Breuer had not even reviewed Schneider's written complaint, so Breuer himself was not aware of the gravity of her claims against him. Breuer Dep., 70:16-20. So when Breuer issued the discipline to Isenberg, he simply advised Isenberg that Isenberg had made someone feel uncomfortable. *Id*. at 71:7-24. Breuer did not discuss the actual allegations with Isenberg. *Id*. Breuer also stated he needed "to talk to **our** human resources director," to figure out what to do next. *Id*. (**Emphasis** added). Breur did not even say that the complaint was of sexual harassment. *Id*. at 72:6-9. Similarly, the write up issued to Isenberg does not state the discipline was for sexual harassment. Ex. 2. Isenberg confirmed that at no time during this meeting did Breuer advise him that the allegations against him were of sexual harassment. Isenberg Dep., 77:5-18.

Breuer then received a phone call on February 25, 2020 from Delgado, who then read off the allegations of the complaint to Breuer. Breuer Dep., 73:3-20. After Breur heard the actual allegations, they "determined that this was much more serious than we had originally assessed." *Id*. Breuer decided he had to take "this to the human resources department over at the administration building on North High Street." *Id*. at 74:22-25. Breuer provided it to Richard Jackson in the HR department, and Jackson told Breuer to simply instruct Schneider and Isenberg to "knock it off," because they believed "the behavior that we had seen was mutual behavior." *Id*. at 75:12-22. Jackson had no interactions with Schneider and could only base his decisions on what was provided to him by Breuer—which was Schneider's statement and no other witness statements. *Id*. at 76:15-77:18. Breuer brought Schneider and Isenberg together in his office and told them they would not be permitted to interact with one another in the future. *Id*. at 75:23-76:2.

6

Following receipt of the written complaint, Breuer did not go through the actual allegations with Isenberg. Breuer Dep., 76:7-8. Breuer did not get any type of statement from Isenberg as to Schneider's specific allegations. *Id*. at 76:19-25. Similarly, even though Schneider advised Breuer that Ciapala and Buydos both witnessed the sexual harassment, Breuer did not get statements from either. *Id*. at 87:25-88:8. Breuer did not get statements from any other individual about her sexual harassment complaint. *Id*. 88:14-23. Breuer did not ask Schneider or Isenberg to turn over their phones, and he did not review the cameras in the office. *Id*. at 90:14-22.

After reviewing the entirety of Schneider's written complaint, VSO did not issue Isenberg any further discipline. Breuer 92:1-12. Breuer did not recommend suspending Isenberg, reducing his pay, or terminating his employment. *Id*.

**E.  VSO Laid Off Schneider Under The Guise Of The COVID-19 Pandemic.**

On April 28, 2020, the Trumbull County Commissioners issued a Financial Impact letter to the heads of the departments in Trumbull County. Ex. 5. The letter forecasted budget limitations with the expectation of decreased tax revenue. *Id*. As a result, the Commissioners asked "each department to reduce their budget by 10%." *Id*. The letter did not specifically call for layoffs. *Id*. Even though departments were asked to reduce their budgets, one of the Commissioners believed the "county should avoid laying off county workers." Ex. 31, at TCVS 281.

At the time of Schneider's layoff, Delgado would help in proposing the budget. Delgado Dep., 156:3-20.  Delgado testified, "I was watching the budget cutbacks, and we were given a letter to decrease our spending. So it had been discussed openly with everyone that there was a possibility of layoffs." *Id*. at 156:3-11. To meet the request of a 10% cutback, the discussions centered around not purchasing a new van for transportation, and not providing raises—the discussion did *not* include laying off Schneider. *Id*. at 159:10-160:16. Laying off Schneider would have resulted in cutting the budget by approximately 1%. *Id*. at 160:17-23. Isenberg, in 2020

earned $68,876 a year. Breuer Dep., 53:11-14. Isenberg's 2020 salary represented approximately 6% of VSO's budget in 2020, and he received raises in 2021 and 2022. *Id*. Ex. 34.

When COVID hit, workload in the office dropped for everyone. Delgado Dep., 83:20-25. In fact, even in September 2021, claims and workload had not picked up. *Id*. at 85:7-10. Workload decreased to the point that if a service office was fired, or quit since the start of pandemic through 2022, VSO did not need a replacement. *Id*. at 85:11-86:5. Although workload decreased across the board, VSO did not consider laying off any other employees. *Id*. at 178:19-179:2. Despite workload decreasing, and despite focusing on cutting the budget, VSO's staff budget continued to increase: $313,266.38 in 2019; $319,359.29 in 2020; and $484,000 in 2021. Exs. 33-35.

Regardless, Breuer decided to lay off Schneider on May 7, 2020. Ex. 18. Although Schneider technically reported up to Delgado, Bruer did not discuss whether to layoff Schneider with Delgado first. Delgado Dep., 43:4-10. Interestingly, although Breuer required authority from the Commissioners to terminate an individual's employment, he laid off Schneider without getting the authority from the board beforehand. It was not until May 14, 2020 that Breuer then sought approval from the board to layoff Schneider. Ex. 24. At the May 14, 2020 board meeting where the motion was made to layoff Schnieder, Breuer did not present to the board any specific documents to substantiate why Schneider should be laid off—he only presented documents that showed that workload had decreased generally. Delgado Dep., 171:7-172:14.

### III.    SUMMARY JUDGMENT STANDARD

The moving party bears the initial burden of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the moving party meets its initial burden does the burden then shift to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment shall be denied "[i]f there are ...'genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"

*Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992). A court must assume as true the evidence

of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477

U.S. at 255. Finally, if the parties present conflicting evidence, a court may not decide which evidence

to believe, by determining which parties' affiants are more credible; rather, credibility determinations

must be left to the fact-finder. *Id*.

### IV. GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER VSO IS AN "EMPLOYER" UNDER TITLE VII.

VSO, a department of the County, meets the definition of an "employer" under Title VII

as its employees are County employees, or because it had at least 15 people working specifically

for VSO during the relevant timeframe. Title VII defines "employer" as an entity that "has fifteen

or more employees for each working day in each of twenty or more calendar weeks in the current

or preceding calendar year." 42 U.S.C. § 2000e(b). An "employee" is "an individual employed by

an employer," excepting certain appointees, but counting "employees subject to the civil service

laws of a State government, governmental agency or political subdivision." 42 U.S.C. § 2000e(f).

Ohio law then defines civil service as "all offices and positions of trust or employment in the

service of the state and in the service of the counties, cities, city health districts, general health

districts, and city school districts of the state." R.C. § 124.01(A). Numerosity is an element of a

plaintiff's Title VII claim, meaning it should be left to a jury if a dispute of fact exists. *Arbaugh v.*

*Y&H Corp.*, 546 U.S. 500 (2006).

On point and binding, The Sixth Circuit Court of Appeals in *Kauffman v. Allied Signal,*

*Inc., Autolite Div.*, 970 F.2d 178, 185 (6th Cir. 1992) held:

> "An individual qualifies as an 'employer' under Title VII if he or she serves in a
> supervisory position and exercises significant control over the plaintiff's hiring,
> firing or conditions of employment." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104
> (4th Cir.1989), *modified on other grounds,* 900 F.2d 27 (4th Cir.1990) (en banc).

"The supervising employee need not have ultimate authority to hire or fire to qualify as an employer, so long as he or she has significant input into such personnel decisions." *Ibid.* Here, Butts did not have ultimate authority to hire or fire, but he did have significant input in the process. At the very least, a question of fact exists as to whether Butts had enough authority to qualify as an agent and therefore as an "employer" under Title VII.

First, VSO should be considered an employer under Title VII as all of its employees are county employees, and Trumbull County employs well over 15 individuals. Trumbull County pays VSO workers and provides their benefits. Charles Dep., 10:22-11:3. All County employees, which includes VSO workers, are issued employee numbers. *Id.* at 25:18-27:24. Charles explained, "they'd get paid by the employee, yes. By the employer, in this case, by Trumbull County." *Id.* The County had more than 15 employees during the relevant timeframe. *Id.* at 29:20-21:13. Charles agreed that Schneider counted as one of the County employees when making that determination. *Id.* at 31:12-18. Additionally, testimony from Delgado and Breuer evidence that they considered themselves as County employees. Delgado Dep., 108:3-13 (testifying the human resource department was in a separate building, and that those individuals were employed by the County); Breuer Dep., 71:7-24 (when Breuer needed guidance as to the sexual harassment complaint, he needed "to talk to **our** human resources director."). As the County and its employees consider VSO workers as employees of the County, and as the County has more than 15 employees, there is a dispute of fact that VSO is considered an employer under Title VII.

Even if the Court limited the review to VSO workers only, VSO had at least 16 employees during the timeframe. VSO had at least 10 employees in 2018/2019. Ex. 33. There were five Commissioners during 2018-2020. Ex. 38. The Commissioners have a "**Job Description**". Ex. 36 (**emphasis** in original). Charles acknowledged that "the point of a job description is for someone who is an employee of that entity." Charles Dep., 42:1-3. The Commissioners handle the operation of VSO, the policies, benefits, and are responsible for hiring and firing of VSO workers. Ex. 36. It

is undisputed that Breuer needed authority from the Commissioners to hire or fire a worker. Pursuant to Sixth Circuit Precedent of *Kauffman*, as the Commissioners exert significant control over VSO's hiring, firing, or conditions of employment, they are considered employers and employees of VSO, bringing VSO's tally up to 15.

As the Commissioners are considered "employers" of VSO, they are also employees of VSO. VSO has advanced no caselaw that excludes employers from the count, and their argument largely confirms that Commissioners are in fact "employers"—as the Commissioners exert significant control over VSO's employees. Next, even the statutes prohibiting certain *active* employees from being appointed as a commissioner **do not state** that the Commissioners are not considered employees of VSO or the County. *See*, R.C. §§ 5901.02, .07. Similarly, the non-binding case of *Nelson v. Clermont Cnty. Veterans' Serv. Comm'n* advanced by VSO **does not** state that Commissioners are not counted toward numerosity. No. 1:11-CV-335-HJW, 2012 WL 893877 (S.D. Ohio Mar. 15, 2012) (same for *Satterwhite v. Ashtabula Cnty. Metroparks*, 514 F.Supp.3d 1014 (N.D. Ohio 2021)). Finally, here, the Commissioners did much more than cut Schneider a check. The Commissioners provided input on what to do about Schneider's sexual harassment complaint **and** ratified the decision to terminate Schneider's employment. Breuer Dep., 76:9-14. Ex. 17.  As the Commissioners exerted control over VSO workers, engaged in and made the adverse actions in the instant matter, and as VSO has not advanced any controlling law or precedent stating that Commissioners are not considered employees, a dispute of fact exists as to whether the Commissioners should be counted here.

Finally, VSO also jointly employed an individual from the Sheriff's Office during the relevant timeframe. VSO and the Sheriff's Office entered into a contract for VSO to staff a Sherrif's Officer for security services. Ex. 37. VSO and the Sheriff's Office agreed that "the

conduct and control of the duties/services to be performed by the sheriff shall be directed by the TCVSC." Ex. 37, at TCVS 668. VSO had the authority to set the officer's pay and could terminate the contract of the officer at any time. *Id.* at TCVS 669, 671. As VSO controlled the duties and services of the officer and set his pay, he is considered an employee of VSO as he was jointly employed. *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed.Appx. 587, 594 (6th Cir. 2009) (holding aggregation of joint employees as permissible for the purposes of establishing the Title VII numerosity requirement). Therefore, Schneider can prove at least 16 employees at VSO.

Alternatively, should the Court rule that Schneider has not established a dispute of fact as to numerosity, Schneider requests that the Court decline to exercise supplemental jurisdiction over her state law claims, and dismiss her state law claims without prejudice.

## V. GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO SCHNEIDER'S SEXUAL HARASSMENT CLAIMS (COUNTS I & II)

### A. Schneider Established Her *Prima Facie* Case for Sexual Harassment.[2]

In order to establish a *prima facie* case of sexual harassment based upon a hostile work environment created by the actions of a non-supervisory co-worker, a plaintiff must demonstrate the following: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) that the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169 (Ohio 2000). Here, Schneider can meet each of these elements. VSO only contests the final element. Doc # 35-1, PageID # 1057.

---

[2] Schneider's state and federal law claims for sexual harassment and retaliation should be analyzed together as they use the same analytical framework. *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003); *See also Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 89, 630 N.E.2d 669 (Ohio 1994).

**B.  VSO Knew Or Should Have Known Of The Sexual Harassment And Failed To Take Prompt And Remedial Action.**

*i.    VSO Knew Or Should Have Known Of The Sexual Harassment.*

First, there is more than enough evidence to create a dispute of fact that VSO knew or should have known of the sexual harassment. Critically, Schneider claims that Isenberg told her as much—that "Herm knows" about his sexual harassment. Ex. 2. Even if VSO claims that Isenberg did not state this, it creates a dispute of fact. Indeed, as Schneider viewed Isenberg and Breuer as best friends, and as they are admittedly friends, this comes off as more credible that Breuer was aware of the harassment. Schneider 92:21-22. Isenberg Dep., 51:18-53:2.

Second, Breuer and Delgado made veiled comments that they believed something was going on between Schneider and Isenberg. Breuer Dep., 75:19-22, 89:6-11 ("the behavior that we had seen was a mutual behavior;" "What I knew to be the truth was that the two of them were mutually friendly."). Delgado Dep., 100:15-17 ("My impression was that their behavior was flirty. They both seemed to partake in this back and forth."). With Breuer and Delgado testifying that they believed something was going on between Schneider and Isenberg, and Isenberg telling Schneider that "Herm knows," a dispute of fact exists that VSO knew of the harassment.

Finally, Schneider also disclosed to VSO that multiple employees were aware of the harassment. Schneider reported that Isenberg sexually harassed her in front of Ciapala and Buydos. Schneider Dep., 80:24-81:6. Ciapala also egged Isenberg's harassment. Ex. 2. Schneider reported others were aware of the harassment as well. *Id*. As Schneider reported that other employees were aware of the harassment, a dispute of fact exists that VSO was aware of the conduct.

*ii.    VSO Failed To Take Prompt Remedial Action.*

Second, there is no dispute that VSO failed to investigate Schneider's complaint, rendering it incapable of taking prompt remedial action. Persuasively, the United States District Court for

the Northern District of Ohio ruled that the employer's failure to conduct a thorough investigation following a complaint of sexual harassment precluded granting summary judgment in *Kasprzak v. DaimlerChrysler Corp.*, 431 F.Supp.2d 779 (N.D. Ohio 2006). There, summary judgment was denied in part as "a jury might also conclude the investigation was not appropriate.

Interestingly, what VSO does *not* argue is that it has a *Faragher/Ellerth* defense—largely because it completely failed to follow its own sexual harassment policy.[3] "Employers who fail to fully investigate a claim of harassment, fail to personally counsel harassers' about their improper conduct, and fail to monitor alleged harassers' conduct after receiving a complaint are less likely to be found to have responded appropriately." *Ellis v. Jungle Jim's Market, Inc.*, 44 N.E.3d 1034, 1050 (12th Dist. 2015) (citing *Shields v. Federal Exp. Customer Information Services Inc.*, 499 Fed.Apx. 473, 479-480 (6th Cir. 2012)). Indeed, in *Shields*, the Sixth Circuit held when the employer **did** discipline the harasser, that a jury could have found that the employer:

> [S]hould have conducted a more thorough investigation into Klingenberg's conduct. The sexual content of the messages, coupled with Klingenberg's own bizarre account of his relationship with Shields, may convince a jury to find that FCIS responded inadequately… Whether these measures were reasonable, sufficient, and taken in good faith are matters for the jury to decide." [*Shields*, at 480.]

More, as exemplified by the 12th District's ruling in *Ellis*, even though Isenberg was issued a written reprimand, VSO's complete lack of investigating Schneider's complaint of sexual harassment should preclude summary judgment:

> Here, Jungle Jim's introduced evidence that the day after Dick learned of the alleged sexual harassment from a third-party employee (Likoy), she spoke with Ellis and Caldas about the allegations. Dick instructed Caldas the complained of behavior was inappropriate, would not be tolerated, and could lead to termination if it continued. She then provided Caldas with a written warning, which was placed in his personnel file. When meeting with Ellis, she advised Ellis to inform her of any further problems and offered to move Ellis out of the seafood department… Dick modified Ellis' work schedule so Ellis would no longer work alone with Caldas. While this evidence tends to support Jungle Jim's contention that it proved the first prong of

---

[3] Referring to the affirmative defense established in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

the *Faragher/Ellerth* defense, **Ellis met her burden on summary judgment of introducing evidence creating issues of fact as to whether Jungle Jim's thoroughly investigated her allegations and whether its actions were reasonably intended to prevent and correct Caldas' sexually harassing behavior**. [*Ellis*, 44 N.E.3d 1034, 1050 (**emphasis** added)].

Similarly, the Sixth Circuit upheld employer liability upon a failure to investigate in *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013). There, the Sixth Circuit held:

> It was the clear testimony of the HR witnesses that Consumers was aware of Waldo's complaints, but that no formal response or investigation was undertaken; this was contrary to Consumers's policies, which promise that "[c]omplaints will be fully investigated." R. 327–4 (Joint Trial Ex. 50 at 25, Code of Conduct) (Page ID # 8755). This failure to respond to known complaints demonstrated that Consumers tolerated or condoned the harassing behavior, or, at the very least, that the company failed to take appropriate remedial action. *See Jackson,* 191 F.3d at 663–64 (holding that when the employer knew about complaints but "made no effort to discover the perpetrators" of harassment, the employer's response was not reasonably calculated to end the harassment); *Waldo,* 2010 WL 2302305, at *6 ("[Waldo's] complaints, from a legal standpoint, warranted a response well beyond that provided by Defendant, which essentially was an ineffective and unmonitored attempt at employee diversity training or sporadic reactions."). Accordingly, it was not an abuse of discretion for the district court to conclude that the clear weight of the evidence established a basis for holding Consumers liable for the hostile work environment. [*Id.* at 817].

Here, VSO does not dispute that it wholly failed to conduct an investigation. The only person who provided a statement about Schneider's complaint was Schneider herself. Breuer Dep., 76:7-25, 87:25-88:23. **VSO did not obtain statements from any other witnesses**. *Id.* This is in direct contravention of its own policy requiring "a thorough and confidential investigation to determine the validity of the allegation." Ex. 9. VSO's failure to conduct an investigation is critical here as Breuer himself acknowledged after reviewing Schnieder's written complaint that her allegations were serious. Breuer Dep., 73:3-20. Indeed, her complaint included multiple complaints of physical touching, sexual propositions, **and at least one complaint that Isenberg made sexual remarks about her minor daughters**. Ex. 2. Regardless, VSO admittedly conducted no investigation following receipt of these serious allegations. As VSO failed to conduct

15

any type of investigation into her complaints, it was no able to effectuate a reasonable remedy, as it could not even substantiate the complaints it received.

Finally, as was the case in *Shields* and *Ellis*, summary judgment is not proper even when VSO issued corrective action. There is no black letter rule that if the sexual harassment is stopped, there is no liability. Indeed, the case of *Garcia v. Beaumont Health Royal Hospital*, of which VSO relies, shows that this is *not* a hard and fast rule. No. 22-1186, 2022 WL 5434558 (6th Cir. Oct. 7, 2022). There, the Sixth Circuit noted "that an employer response that *does* prevent harassment precludes liability, has been **implied** in several cases." *Id*. at *6 (*emphasis* in original, **emphasis** added). VSO's own flagship case confirms this is not a hard rule. As this is not a hard rule, and as VSO failed to investigate Schneider's complaint, VSO can be held liable for its inaction.

## VI.    GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO SCHNEIDER'S RETALIATION CLAIMS (COUNTS V & VI).

To establish a prima facie case of retaliation, Schneider must show that (1) she engaged in a protected activity, (2) the defending party was aware of that activity, (3) the defending party took an adverse action against the employee, and (4) there is a causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007 Ohio 6442, 879 N.E.2d 174 (Ohio 2007). The burden of establishing a prima facie case in a retaliation action "**is not onerous, but one easily met**." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (**emphasis** added). VSO only contests the final element. Doc #35-1, PageID # 1061.

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that his protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). The "but for" burden is also not meant to be lofty:

> Pursuant to *Burdine,* the plaintiff is not required to conclusively prove all the elements of his claim at the prima facie stage of the burden-shifting analysis.

* * *

> **Wholf was not required to conclusively establish the causation element of his claim at the first stage of the *McDonnell Douglas* test**; he was only required to produce evidence demonstrating that appellees took adverse employment action against him because of his participation in protected activity. [*Wholf v. Tremco, Inc.*, 26 N.E.3d 902, ¶ 47 (8th Dist. 2015); *see also Vogt v. Total Renal Care, Inc.*, No. 103102, 2016 WL 3763074, \*7 (8th Dist. 2016); *Denton v. Safeguard Properties, LLC*, 1:16-cv-00134, 2017 WL 3971635 (N.D. Ohio, 2017)].

Also, when examining the prima facie elements, courts must avoid conflating the plaintiff's burden with the legitimate business reason/pretext elements of the *McDonnell Douglas* test. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813-14 (6th Cir. 2011); *White v. Columbus Metropolitan Housing Auth*., 429 F.3d 232, 242 (6th Cir. 2005); *Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579, 584-85 (6th Cir. 2002).

Evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's protected activity is relevant. *Nguyen, supra*, at 563; *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987). Temporal proximity **alone** can satisfy the causation element. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.); *Asmo v. Keane, Inc.*, 471 F.3d 588 , 593 (6th Cir. 2006) (temporal proximity can establish a causal connection between the protected activity and unlawful employment action in the retaliation context.). Critically, the Sixth Circuit has consistently held that temporal proximity of **less than six months** is sufficient to preclude summary judgment. *See Nicholson v. City of Clarksville, Tenn.*, 530 App'x 434, 447 (6th Cir. 2007) ("But a prima facie case based on temporal proximity alone requires a short period of time between the protected activity and the adverse employment action, "usually less than six months.""); *Nguyen*, 229 F.3d 559, 567 & *Parnell v. West*, 114 F.3d 1188, 1997 WL 271751, \*3 (6th Cir. 1997) ("cases that have permitted a prima facie case to be made based on the proximity

of time have all been short periods of time, usually less than six months."); *Sharp v. Aker Plant Servs. Grp., Inc.*, 600 F.App'x 337, 341 (6th Cir. 2015). Moreover, even if temporal proximity itself is insufficient to find a causal connection, "a temporal connection couple with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).

Here, Schneider submitted her written complaint of sexual harassment on February 21, 2020, and VSO laid her off on May 7, 2020—two and a half months later. Pursuant to the binding Sixth Circuit precedent of *Nicholson*, *Nguyen*, *Parnell*, and *Sharp*, as the temporal proximity between her protected activity and separation of employment was less than six months, the temporal proximity alone establishes her causation element. If this were not enough, even though workload was down across the board, and even though VSO had been urged to cut its budget by 10%, VSO decided to terminate Schneider whose pay was the lowest of the employees, and did not consider laying off any other employees who made more than her, but more importantly, *had not made any protected complaints*. Breuer Dep., 150:3-9, 151:10-12; Delgado Dep., 185:25-186:22. As VSO terminated Schneider within two and a half months of her protected complaint (which should be sufficient) and she was the only person considered for layoff while employees who had not made protected complaints were not considered, Schneider established her prima facie case of retaliation.

## VII. QUESTIONS OF FACT REMAIN REGARDING VSO'S PRETEXTUAL REASON FOR TERMINATING SCHNEIDER'S EMPLOYMENT.

"Once the prima facie case is established, a presumption of discrimination exists, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination." *Berenda v. Buzek, Kiplinger & Associates*, 2002-Ohio-44, 2002 WL 68374, *4 (8th Dist. 2002). The burden then shifts to the plaintiff who may show that the defendant's proffered reason is pretextual because it "(1) has no basis in fact, (2) did not actually motivate the

defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Thus, a plaintiff can then "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-573 (6th Cir. 2000). When examining whether a plaintiff can establish pretext, the Sixth Circuit cautioned that "in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain" and thus, specific allegations or evidence by the plaintiff are not necessary to create a genuine issue of material fact. *Singfield v. Akron Metro. Hous. Authority*, 389 F.3d 555 (6th Cir. 2004) citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). The Court in *Singfield* further stated that such factual determinations are frequently inappropriate for summary judgment. *Id.* (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985) (stating that very little additional evidence is required to raise a genuine issue of fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a *prima facie* case has been established)).

Here, VSO's purported reason for termination is lack of work due to economic shortfalls from the COVID-19 pandemic. Although VSO did not need the number of service officers it had, it did not consider laying off Isenberg—which would have reduced they budget by approximately 6%. Ex. 34. Delgado Dep., 85:11-86:5. Additionally, despite a lack of work and budget deficits, VSO spent more on its staff every single year after COVID hit. Exs. 33-35. Blatantly, VSO continued to employ an individual from the Sheriff's Office and paid him a salary of $78,000 when it closed its office to the public for some time and had significantly reduced foot traffic. Ex. 37. Breuer 2nd Dep., 16:12-18. Regardless, VSO did not terminate the contract when it stated "If, at

any future time, **budget cuts and lay-offs, etc. influence our ability to pay for such services, this agreement will become null and void.**" Ex. 37, at TCVS 669 (**emphasis** added). Breuer 2nd Dep., 23:21-24-4. Again, if the economic downturn actually drove VSO's decision-making, it would have ended this contract. As VSO had many ways to significantly reduce its budget within the request of Trumbull County, but failed to do so, a dispute of fact exists as to pretext.

Finally, VSO subconsciously agrees that it laid off Schneider as a result of her sexual harassment complaint. As VSO notes, part of the reason for her termination was that it did not want to continue paying for her when she was not coming into the office. Doc # 35-1, PageID # 1062. However, when individuals were brought back to the office, Delgado "made a schedule of who came in certain days, and **I made sure not to have Adrienne and Mark here at the same times… we tried doing a few different schedules here of you work a half day in the morning, and this person works in the afternoon**." Delgado Dep., 185:12-20 (**emphasis** added). Here, VSO acknowledges that one of the reasons for not having Schneider come in to work as much *was a direct result of attempting to separate her from Isenberg following her sexual harassment complaint*. VSO cannot complain it paid someone to not work when it did not schedule her purposefully to avoid her harasser. As it acknowledges that it terminated Schneider as a result of not being scheduled to work (which is due to her sexual harassment complaint), there is at least a dispute of fact that its reason for termination has no basis in fact.

### VIII.   CONCLUSION

For the foregoing reasons, Schneider requests that this Honorable Court deny VSO's Motion for Summary Judgment in its entirety. Alternatively, should the Honorable Court find for VSO as to numerosity, Schneider requests that the Court dismiss her R.C. Chapter 4112 claims without prejudice.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I hereby certify that the instant matter is assigned to the standard track and that the foregoing

complies with Local Rule 7.1(f).

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S LAW FIRM**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February 2023, a copy of the foregoing was filed

via the Court's electronic filing system and made available to all parties in this matter.

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
**SPITZ, THE EMPLOYEE'S LAW FIRM**