PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE SCHNEIDER, | ) | |
| | ) | CASE NO. 4:22CV0126 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| TRUMBULL COUNTY VETERANS | ) | |
| SERVICE COMMISSION, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 35] |

Pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 35. Plaintiff filed an opposition (ECF No. 37) and Defendant filed a reply (ECF No. 38). Having reviewed the parties' briefs, exhibits, and applicable law, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Counts I and III and denies summary judgment as to Plaintiff's Counts II and IV.[1]

## I. Background

Plaintiff Adrienne Schneider filed a complaint alleging Title VII and Ohio state law sexual harassment and retaliation claims against her former employer, Defendant Trumbull County Veterans Service Commission ("TCVSC"). *See* ECF No. 1. From March 11, 2019, until May 7, 2020, Plaintiff worked as an office administrator for Defendant. ECF No. 37 at PageID #: 1352, 1358. Throughout her tenure at TCVSC, Plaintiff was directly supervised by Cari

---

[1] Plaintiff's Counts I and III allege sexual harassment and retaliation, respectively, in violation of Title VII. Plaintiff's Counts II and IV allege sexual harassment and retaliation, respectively, in violation of Ohio state law.

(4:22CV0126)

Delgado, TCVSC's Deputy Director, who reported to Herman Breuer, TCVSC's Executive

Director.  ECF No. 29 at PageID #: 578 (Cari Delgado Tr.).  As a TCVSC office administrator,

Plaintiff's duties consisted of greeting veterans or clients who came into the office, answering

and transferring phone calls, scheduling appointments, and other administrative duties.  ECF No.

28 at PageID #: 227 (Adrienne Schneider Tr.); ECF No. 29 at PageID #: 578 (Cari Delgado Tr.).

Given the nature of her job duties, Plaintiff often interacted with TCVSC service officers

including Mark Isenberg, Chris Buydos, Chuck Ciapala, and Herman Breuer.  ECF No. 28 at

PageID #: 238 (Adrienne Schneider Tr.).

Plaintiff alleges that between July 2019 and February 20, 2020, Mark Isenberg, a Senior

Services Officer at TCVSC, sexually harassed her on multiple occasions.  ECF No. 37 at PageID

#: 1353.  During Plaintiff's deposition, Plaintiff elaborated on the myriad encounters when she

was harassed by Mr. Isenberg.  *See* ECF No. 28.  In her written grievance, Plaintiff detailed that

Mr. Isenberg's behavior included verbal and written lewd comments and inappropriate physical

touching, all of which left Plaintiff feeling "intimidated and uncomfortable."  ECF No. 37-3 at

PageID #: 1378.

Plaintiff describes multiple instances when Mr. Isenberg verbalized or wrote lewd

comments directed at her.  The following highlight only some of the examples that Plaintiff

provides:

1. Mr. Isenberg "would write sexual gestures on yellow sticky notes and show them to
[Plaintiff], then rip them off, chew them up, and spit them in the trash can, and he told
[Plaintiff] that way they couldn't be used for evidence."  ECF No. 28 at PageID #:
257–58 (Adrienne Schneider Tr.).  On one of these sticky notes, Mr. Isenberg wrote

2

(4:22CV0126)

    "You're so fucking hot. I want to kiss you today. You're sexy." ECF No. 28 at PageID #: 319 (Adrienne Schneider Tr.).

2.    Mr. Isenberg commented to Plaintiff that he could see where her "daughters get their good looks from" and that her daughters "had nice asses." ECF No. 28 at PageID #: 307 (Adrienne Schneider Tr.).

3.    On a few occasions "in a hallway in passing or when he wrote the comment on a yellow stick note," Mr. Isenberg "would walk mail over to the post office behind the building and walk past [Plaintiff] and sa[y], oh, I haven't sexually harassed you today." ECF No. 28 at PageID #: 318 (Adrienne Schneider Tr.).

4.    Mr. Isenberg frequently communicated to Plaintiff that he was in love with her, and that once he started making those comments, he would make them "maybe once a week." ECF No. 28 at PageID #: 323 (Adrienne Schneider Tr.).

5.    Mr. Isenberg also told Plaintiff that "I'm watching you on the camera." ECF No. 28 at PageID #: 324 (Adrienne Schneider Tr.).

6.    On another occasion, Mr. Isenberg asked Plaintiff if he could buy her "something nice to slip into," referring to lingerie. ECF No. 28 at PageID #: 333 (Adrienne Schneider Tr.).

7.    One day when Mr. Isenberg ran into Plaintiff in the hallway, as Mr. Isenberg was exiting the lunchroom, Mr. Isenberg told Plaintiff that he wanted to kiss her ankles. ECF No. 28 at PageID #: 334 (Adrienne Schneider Tr.).

8.    Once, Mr. Isenberg asked Plaintiff to send him nude photographs of herself to his phone. ECF No. 28 at PageID #: 336 (Adrienne Schneider Tr.).

(4:22CV0126)

9.  Mr. Isenberg was seated at his desk in his office one day when Plaintiff was in his office, and Mr. Isenberg told Plaintiff that he had an erection under his desk.  ECF No. 28 at PageID #: 342 (Adrienne Schneider Tr.).

10.  Another time when Plaintiff was in Mr. Isenberg's office, "he told [her] to shut the door and we can do it on his desk or maybe somewhere like the community room where no one is."  ECF No. 28 at PageID #: 343 (Adrienne Schneider Tr.).

11.  Mr. Isenberg, in the presence of at least one other co-worker, told Plaintiff that he wanted to make her "his sex slave" and keep her "locked up in a box in his basement."  ECF No. 28 at PageID #: 347 (Adrienne Schneider Tr.).

Plaintiff alleges that Mr. Isenberg's harassment was not limited to verbal comments, but that he also initiated inappropriate and unwelcomed physical touch.  The following are examples of instances when Mr. Isenberg initiated non-consensual physical contact:

1.  On several occasions, Mr. Isenberg would approach Plaintiff and touch her on her shoulder with his finger puppet elephant while telling her that he was falling in love with her.  ECF No. 28 at PageID #: 238, 288 (Adrienne Schneider Tr.).

2.  On or around Christmas 2019 when TCVSC employees gathered to celebrate the holidays, Mr. Isenberg moved close to Plaintiff, rubbed her left upper thigh with his hand, and asked her "to meet him outside for a kiss in the parking lot."  ECF No. 28 at PageID #: 291–92 (Adrienne Schneider Tr.).  Plaintiff stated that it all happened so fast that she did not have an opportunity to push him away.  ECF No. 28 at PageID #: 292 (Adrienne Schneider Tr.).  She remained seated, finished her drink, and went home.  ECF No. 28 at PageID #: 292 (Adrienne Schneider Tr.).

4

(4:22CV0126)

3. Once when Mr. Isenberg and Plaintiff were both in his office, he grabbed her hand and kissed it.  ECF No. 28 at PageID #: 293 (Adrienne Schneider Tr.).  When this happened, Plaintiff remembered that she froze and felt a "feeling of panic."  ECF No. 28 at PageID #: 295 (Adrienne Schneider Tr.).

Although Mr. Isenberg mostly harassed Plaintiff when there were either no other witnesses nearby or out of the earshot of potential witnesses, Plaintiff notes that there were times when "[o]ther co-workers [saw] his behavior and replied how inappropriate it was what he said, but walk[ed] away."  ECF No. 28 at PageID #: 350 (Adrienne Schneider Tr.).  She also believes that at least one other service officer, Chuck Ciapala, "may have seen a few things" regarding Mr. Isenberg's harassment of Plaintiff.  ECF No. 28 at PageID #: 354 (Adrienne Schneider Tr.). One instance of when other co-workers were likely aware of Mr. Isenberg's inappropriate behavior was on or around Thanksgiving 2019 when TCVSC employees gathered to have a drink before the holidays at the VFW bar.  At some point during this get-together, Mr. Isenberg told Chuck Ciapala and Chris Buydos that Plaintiff's "bird's been stuffed six times."  ECF No. 28 at PageID #: 289 (Adrienne Schneider Tr.).   Additionally, when Mr. Isenberg made the comment about wanting Plaintiff to be "his sex slave," Plaintiff stated that Tommy D., a TCVSC van driver, heard it and laughed it off with Mr. Isenberg.  ECF No. 28 at PageID #: 348 (Adrienne Schneider Tr.).

On February 20, 2020, Plaintiff reported the sexual harassment to Ms. Delgado, who was Plaintiff's direct supervisor at the time.  Plaintiff, who was joined by her then fiancé and now husband, met with Ms. Delgado on February 20, 2020 and remembers relaying the following details of the ongoing sexual harassment that Plaintiff was experiencing:

> I remember telling her about the sticky notes that he would write
> sexual gestures on or comments.  I told her that he had asked me to

5

(4:22CV0126)

> send nude photos to his phone. I also told her that he had an
> erection underneath his desk that he made me aware of.  I had
> advised her of the finger puppet, coming into my office space and
> telling me that he had spoke with his therapist and that he wasn't
> able to touch me, but only with his finger puppet, he could. . . I
> believe I told her about the gala and that he had been watching me
> at the gala.

ECF No. 28 at PageID #: 287–88 (Adrienne Schneider Tr.).  Plaintiff is adamant that Mr.

Isenberg's actions towards her were unwelcomed.  Ms. Delgado asked Plaintiff to provide a

written statement that she could share with Mr. Breuer at a later time.  Plaintiff provided Ms.

Delgado with a written statement on February 21, 2020, detailing the various instances of sexual

harassment by her co-worker, Senior Service Officer Mark Isenberg.  ECF No. 37-3.

After receiving Plaintiff's written account of allegations against Mr. Isenberg, Ms.

Delgado informed Mr. Breuer about the existence of the sexual harassment complaint but did not

share all the details or Plaintiff's written complaint with Mr. Breuer.  In response, Mr. Breuer

issued Mr. Isenberg a written reprimand on February 21, 2020 and told him to stay away from

Plaintiff.  ECF No. 35-1 at PageID #: 1052; ECF No. 37 at PageID #: 1356.  This occurred

before Mr. Breuer had reviewed Plaintiff's written complaint.  Mr. Breuer's written reprimand

noted that Plaintiff "has expressed that comments made by Mark Isenberg have been of a nature

that makes her uncomfortable. She expressed this behavior has happened on more than one

occasion."  ECF No. 37-2 at PageID #: 1375.  After issuing the reprimand, Mr. Breuer told Mr.

Isenberg that they would discuss the situation further after Mr. Breuer returned to the office

because Mr. Breuer was in Washington D.C. at the time.  ECF No. 35-1 at PageID #: 1052.

On February 25, 2020, Mr. Breuer was finally privy to the details of Plaintiff's written

complaint when Ms. Delgado called Mr. Breuer over the phone and verbally read Plaintiff's

written complaint to him.  After realizing the severity of the allegations, Mr. Breuer decided to

(4:22CV0126)

reach out to the human resources department of Trumbull County for further guidance on handling the sexual harassment complaint.  ECF No. 35-1 at PageID #: 1052.  Richard Jackson in the Trumbull County human resources department advised Mr. Breuer to instruct Plaintiff and Mr. Isenberg to "'knock it off,' because Mr. Jackson deemed it to be "mutual behavior" based on the circumstances of which he was made aware.  ECF No. 37 at PageID #: 1356.  Deciding to follow this advice, Mr. Breuer met with Plaintiff and Mr. Isenberg together in his office and informed them that "they would not be permitted to interact with one another in the future." ECF No. 37 at PageID #: 1356.  During an executive session, Mr. Breuer read Plaintiff's written complaint to the Veterans Service Commission Board and described the steps he had taken in response.  ECF No. 35-1 at PageID #: 1053.  The Board was satisfied with the action that Mr. Breuer had taken.  ECF No. 35-1 at PageID #: 1053.

After being reprimanded, Mr. Isenberg ceased harassing Plaintiff.  Neither Mr. Breuer nor any other representative of Defendant pursued further investigation of the matter.  ECF No. 37 at PageID #: 1357.  Plaintiff and Mr. Isenberg both remained employed at TCVSC but were intentionally scheduled to come into the office at different times to ensure that they would not have contact with one another.  ECF No. 37 at PageID #: 1357; ECF No. 29 at PageID #: 730 (Cari Delgado Tr.).

 In mid-March 2020, COVID-19 nearly paralyzed the entire country, and Defendant closed its office on March 23, 2020.  ECF No. 35-1 at PageID #: 1054.  Between March 20, 2020 and April 12, 2020, Plaintiff stayed home and did not work, but still received full pay.  ECF No. 35-1 at PageID #: 1054.  Beginning April 13, 2020, Plaintiff worked for three hours per day at the office and received full pay.  ECF No. 35-1 at PageID #: 1054.  On April 28, 2020, Mr. Breuer and Ms. Delgado received a financial impact letter from the Trumbull County Board of

(4:22CV0126)

Commissioners in which they were instructed to decrease their spending by 10%.  ECF No. 29 at PageID #: 703–704 (Cari Delgado Tr.).  The letter did not specifically instruct TCVSC to conduct layoffs.  Nonetheless, to meet the new budget mandate, Mr. Breuer made the decision to terminate Plaintiff's employment on May 7, 2020.[2]

Plaintiff brought this action claiming that Defendant is liable for its inadequate response to her sexual harassment claims and for retaliating against her by terminating her employment because she came forward with a complaint of sexual harassment.  Defendant filed a Second Amended Answer to clarify that it does not qualify as an "employer", as defined by Title VII (ECF No. 22).  The Court granted Plaintiff additional time for discovery to explore Defendant's newly pled defense.  ECF No. 31.  Defendant then filed a Motion for Summary Judgment arguing that all of Plaintiff's claims should be dismissed because Defendant does not qualify as an employer under the Title VII definition.  *See* ECF No. 35.  Alternatively, Defendant contends that even if the Court finds that it is considered an employer under Title VII, Defendant is not liable for Plaintiff's sexual harassment and retaliation claims under Title VII and Ohio state law. *See* ECF No. 35; ECF No. 38.  Plaintiff filed an opposition arguing that there are genuine disputes of material fact, and, therefore, the Court should deny summary judgment.  ECF No. 37.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) instructs courts to grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, "after adequate

---

[2] Plaintiff alleges that she was the only employee considered for lay off and that none of the other TCVSC employees were considered.  ECF No. 37 at PageID #: 1368. Defendant does not dispute this allegation.

(4:22CV0126)

time for discovery and upon motion, [the Court will enter summary judgment] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. The non-moving party must go beyond the pleadings to designate specific facts found in the record that demonstrate genuine issues for trial, which may include affidavits, declarations, depositions, answers to interrogatories, or admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c)); *see also KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v.*

9

(4:22CV0126)

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party."  *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017)).

### III. Discussion

### A.  Title VII Employer

The parties disagree on whether Defendant is liable as an employer under Title VII, but they do not dispute that Defendant is an employer liable under Ohio Rev. Code § 4112.01[3]. Defendant asserts that the records disclosed during discovery show that in the relevant years, Defendant never had more than thirteen employees, which removes its qualification as an "employer" under Title VII.  Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e.  If Defendant is not considered an employer under Title VII, it cannot be held liable for Plaintiff's Title VII claims.  Plaintiff asserts two main arguments to support its claim that Defendant has more than fifteen employees and should be considered an employer for the purpose of Title VII liability.

First, Plaintiff argues that Defendant should be considered an employer under Title VII because TCVSC is a department of Trumbull County, therefore, "all of its employees are county employees and Trumbull County employs well over 15 individuals."  ECF No. 37 at PageID #:

---

[3] Under Ohio Revised Code § 4112.01, an employer includes "the state, any political subdivision of the state, or a person employing four or more persons within the state, and any agent of the state, political subdivision, or person."  Ohio Rev. Code § 4112.01.  It is undisputed that TCVSC had at least four employees at all relevant times.

(4:22CV0126)

1360.  "The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work."  *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 612 (6th Cir. 2003) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)).  The Sixth Circuit has recognized four factors that courts must consider to determine whether to treat two entities as a single employer, including "(1) interrelation of operations, *i.e.*, common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control."  *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993–94 (6th Cir. 1997).  Although none of these factors are outcome determinative and they do not all need to be met, "control over labor relations is a central concern."  *Id.* at 994.

It is worth noting that Plaintiff has only brought claims against TCVSC and has not joined Trumbull County as a defendant.  Nevertheless, Plaintiff claims that the employees of Trumbull County can be aggregated with those specific to Defendant for the purpose of Title VII liability.  To support her claim that TCVSC is a department of Trumbull County, Plaintiff states that "Trumbull County pays [TCVSC] workers and provides their benefits."  ECF No. 37 at PageID #: 1360.  Plaintiff also points out that Steven Charles, an administrative assistant in Trumbull County's human resources department, stated during his deposition that Plaintiff "counted as one of the County employees" when the decision was made to terminate her employment with Defendant.  Plaintiff also argues that Herman Breuer and Cari Delgado both self-identified as county employees and that they relied on the human resources department of Trumbull County for advice on handling Plaintiff's sexual harassment complaint are indications that TCVSC employees are Trumbull County employees.

11

(4:22CV0126)

Defendant argues that Trumbull County and TCVSC are not joint employers, and, therefore, Trumbull County employees cannot be included in Defendant's overall employee headcount.  Despite Trumbull County providing a few centralized services to TCVSC, including payroll processing and benefits administration, TCVSC is its own autonomous entity and Trumbull County does not control the manner and means by which TCVSC operates.  Steven Charles testified in his deposition that TCVSC has its own hiring and termination authority, and it does not need approval from the county commissioners.  For example, Mr. Breuer was able to terminate Plaintiff's employment without getting any sort of approval from Trumbull County.  Although Mr. Breuer had reached out to the Trumbull County human resources department for advice on handling Plaintiff's sexual harassment complaint, Mr. Breuer was ultimately the decisionmaker making the determination on behalf of TCVSC.  Trumbull County was merely an advisor and had no authority to demand that Mr. Breuer take any specific action.  Furthermore, TCVSC has its own board of commissioners who are appointed by judges, separate from the county's board of commissioners.

Ohio boards of county commissioners oversee the funding of veterans service commissions in Ohio.  Veterans service commissions make their own day-to-day operational decisions without county commissioners' approval.  *See* Ohio Rev. Code § 5901.07.  Trumbull County may oversee the Trumbull County Veterans Services Commission to ensure that it complies with applicable law and may offer some of its resources, but its authority over TCVSC's decisions is limited.  *See Lynch v. Gallia Cty. Bd. of Commrs.*, 1997-Ohio-392, 79 Ohio St. 3d 251, 258, 680 N.E.2d 1222, 1227 (discussing the General Assembly's intent for the relationship between boards of county commissioners and veterans service commissions, the Ohio Supreme Court provided "the General Assembly has balanced the veterans service

12

(4:22CV0126)

commissions' mandate with a power in the boards of county commissioners to review the budget, and to reject it in the case of any failure to conform to applicable law. However, boards of county commissioners are not permitted to revise lawful veterans service commission budgets."). Trumbull County employees cannot be aggregated with TCVSC employees for the purpose of holding Defendant liable under Title VII because the two entities are not joint employers.

Alternatively, Plaintiff argues that even if the Court does not find that TCVSC employees are Trumbull County employees, the five commissioners overseeing TCVSC and the one security guard whose salary is partially paid by the Sheriff's office are considered Defendant's employees for the purpose of Title VII liability. Counting these six people as Defendant's employees would put the total number of its employees above the fifteen-employee threshold mandated by Title VII.

Ohio Rev. Code § 5901.02 provides:

> In each county there shall be a commission known as "the veterans service commission." Except as provided in section 5901.021 of the Revised Code, the commission shall be composed of five residents of the county appointed to five-year terms by a judge of the court of common pleas. At the time of appointment or reappointment to the commission, no commission member appointed under this section shall be an employee of the commission or hold an elective or other appointive office of the county served by the commission.

Ohio Rev. Code § 5901.02. In accord with the reading of the Ohio statute, Defendant contends that the five commissioners are not Defendant's employees because they are not hired by TCVSC, but rather appointed by a judge of the Court Common Pleas pursuant to Ohio Rev. Code § 5901.02. Defendant also adds that "TCVSC does not 'supervise' the commissioners, and there is no one higher in the organization than the commission. Commissioners do not simply influence the organization, they control it." ECF No. 35-1 at PageID #: 1056. Defendant

13

(4:22CV0126)

therefore maintains that it "had fewer than fifteen employees at all times during 2018, 2019 and 2020." ECF No. 35-1 at PageID #: 1055.

Plaintiff and Defendant concur that the veterans service commissioners handle TCVSC operations, which includes benefits, and establishing policies and procedures. ECF No. 35-1 at PageID #: 1056; ECF No. 37 at PageID #: 1360. It is also true that "Commissioners provided input on what to do about Schneider's sexual harassment complaint and ratified the decision to terminate Schneider's employment." ECF No. 37 at PageID #: 1361. Nevertheless, the Court finds that the plain language of the Ohio statute makes it clear that the five appointed veterans service commissioners are not employees of TCVSC despite their oversight of TCVSC. Thus, the commissioners cannot be counted towards Defendant's total number of employees for the purpose of Title VII liability. Given that the Court finds that the five commissioners are not employees of TCVSC, Defendant fails to meet the numerosity requirement of a Title VII employer. This conclusion is unchanged even if the individual security guard, who is jointly employed by both TCVSC and the Sheriff's Office, is included in Defendant's employee headcount.

Regarding the application of Title VII, the Court finds as a matter of law that Defendant is not subject to liability under Title VII because it did not have at least fifteen employees at the relevant times to be considered an employer as defined by Title VII. *See* 42 U.S.C. § 2000e. Because Defendant is not an employer liable under Title VII, Plaintiff's Title VII claims must be dismissed. The Court, therefore, will not evaluate the merits of Plaintiff's sexual harassment and retaliation claims under Title VII.[4]

---

[4] It is worth noting that had Plaintiff been able to establish the applicability of Title VII, the ruling on those claims would mirror those reached for the Ohio state law claims.

(4:22CV0126)

## B.  Sexual Harassment and Retaliation

Because all federal claims in this matter are dismissed, only Plaintiff's state law claims remain.  Under these circumstances, the Court has discretion when determining whether to exercise 28 U.S.C. § 1367(a) jurisdiction over supplemental state law claims after dismissing the federal claims that gave rise to its original jurisdiction.  *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009)).  Given that "[t]he Ohio Supreme Court has ruled that federal case law interpreting and applying Title VII is generally applicable to cases involving [R.C. Chapter] 4112," the Court elects to maintain jurisdiction over Plaintiff's state law claims.  *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).  Plaintiff's state law claims include Count II and Count IV.  Count II alleges discrimination on the basis of sex through the creation of a hostile work environment in violation of Ohio Rev. Code § 4112.02(A).  Count IV alleges retaliation in violation of Ohio Rev. Code § 4112.02(I).

### i. Sexual Harassment

In Count II, Plaintiff claims that Defendant created and sustained a hostile work environment by ratifying the sexual harassment that she suffered.  Ohio Rev. Code § 4112.02(A) provides, in relevant part,

> For any employer, because of the . . . sex . . . of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02.  The Ohio Supreme Court has held that one of the ways to establish a violation of Ohio Rev. Code § 4112.02(A) is by proving " 'hostile environment' harassment, *i.e.*, harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment."  *Hampel v. Food Ingredients Specialties, Inc.*, 2000-

15

(4:22CV0126)

Ohio-128, 89 Ohio St. 3d 169, 176, 729 N.E.2d 726, 732.  To establish a prima facie case of

hostile-environment sexual harassment, not only must Plaintiff show that she is a member of a

protected class, but she must also show

> (1) that the harassment was unwelcome, (2) that the harassment
> was based on sex, (3) that the harassing conduct was sufficiently
> severe or pervasive to affect the "terms, conditions, or privileges of
> employment, or any matter directly or indirectly related to
> employment," and (4) that . . . the employer, through its agents or
> supervisory personnel, knew or should have known of the
> harassment and failed to take immediate and appropriate corrective
> action.

*Hampel v. Food Ingredients Specialties, Inc.*, 2000-Ohio-128, 89 Ohio St. 3d 169, 176–77, 729

N.E.2d 726, 732–33; *see also Wyatt v. Nissan N. Am., Inc.,* 999 F.3d 400, 411 (6th Cir. 2021).  In

this case, Plaintiff was allegedly harassed by a co-worker, as opposed to a supervisor.  To hold

Defendant liable for Mr. Isenberg's harassing conduct, Plaintiff "must show that the employer's

response to the plaintiff's complaints 'manifest[ed] indifference or unreasonableness in light of

the facts the employer knew or should have known.' " *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d

400, 417 (6th Cir. 2021) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir.

2013)).

The parties concede that Plaintiff has established that she experienced unwelcome

harassment based on sex and that the harassing conduct was "sufficiently severe or pervasive to

affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly

related to employment.'" *Hampel v. Food Ingredients Specialties, Inc.*, 2000-Ohio-128, 89 Ohio

St. 3d 169, 176–77, 729 N.E.2d 726, 732–33.  It is disputed, however, whether Defendant knew

about Plaintiff's harassment prior to Plaintiff's formal report and whether it responded

appropriately after receiving Plaintiff's sexual harassment grievance.  Defendant argues that it

did not know or have any reason to know about the sexual harassment prior to Plaintiff reporting

16

(4:22CV0126)

it to Ms. Delgado on February 20, 2020.  It also contends that it took immediate and appropriate corrective action which ended the alleged harassment.  Plaintiff claims that Defendant knew or should have known about the alleged sexual harassment prior to her February 20, 2020 report. She also argues that Defendant's failure to conduct an investigation and substantiate Plaintiff's claims must be factored into determining Defendant's liability.

Plaintiff provided examples of instances when Mr. Isenberg made harassing comments to her in front of other co-workers prior to her reporting his inappropriate behavior on February 20, 2020.  For example, when Mr. Isenberg told Plaintiff that he wanted to make Plaintiff "his sex slave" and keep her "locked up in a box in his basement," another TCVSC employee, Tommy D. was present.  ECF No. 28 at PageID #: 347 (Adrienne Schneider Tr.).  There were other times when Mr. Isenberg would allegedly harass Plaintiff while she was sitting at her desk and other co-workers such as Robin LeDuc and Chuck Ciapala were within earshot.  Mr. Ciapala definitely heard Mr. Isenberg's unwarranted comments directed at Plaintiff because Mr. Ciapala seemed to encourage Mr. Isenberg's behavior by saying "well, there you go.  She's not married, so keep at it."  ECF No. 28 at PageID #: 350–51.  Additionally, Plaintiff points to statements that Mr. Breuer and Ms. Delgado made during their respective depositions, which indicate that the Executive Director and Deputy Director of TCVSC were under the impression that "something was going on" between Plaintiff and Mr. Isenberg.  ECF No. 37 at PageID #: 1363.  Perhaps none of these facts alone are smoking guns in and of themselves, but the culmination of these facts is sufficient to demonstrate the existence of a genuine dispute of material fact with regard to whether Defendant knew or should have known about the ongoing sexual harassment that Plaintiff was suffering.

17

(4:22CV0126)

The parties stipulate that Mr. Isenberg stopped harassing Plaintiff after she reported his unwelcomed behavior on February 20, 2020. ECF No. 40 at PageID #: 1432. The Sixth Circuit has held that an employer's response is "generally adequate . . . if it is 'reasonably calculated to end the harassment.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663–64 (6th Cir. 1999)). Defendant argues that its response was adequate because the sexual harassment ceased after Mr. Breuer reprimanded Mr. Isenberg. Plaintiff argues that Defendant's response was nevertheless inadequate because Defendant never bothered to conduct an investigation or attempt to substantiate Plaintiff's claims. Furthermore, if Defendant knew or had reason to know that Mr. Isenberg was sexually harassing Plaintiff, it did not take immediate corrective action until after Plaintiff made her formal report. Mr. Breuer merely issued a written reprimand and met with Mr. Isenberg regarding Plaintiff's complaint, but he neither made it known to Mr. Isenberg that Plaintiff specifically reported sexual harassment, nor did he conduct any further investigation and attempt to substantiate Plaintiff's claims. Reasonable minds may find that Mr. Breuer's actions were not reasonably calculated to end the harassment given that Defendant's response to Plaintiff's sexual harassment grievances was essentially issuing Mr. Isenberg only a symbolic slap on the wrist.

For the reasons above, the Court finds that Defendant's knowledge of the harassment and the adequacy of its response to Plaintiff's report of the harassment are questions for a jury. The Court denies summary judgment as to Plaintiff's Count II.

### ii. Retaliation

In Count IV, Plaintiff alleges that Defendant retaliated against her by terminating her employment after she reported being sexually harassed by Senior Service Officer Mark Isenberg.

18

(4:22CV0126)

Ohio Rev. Code § 4112.02(I) provides, in relevant part, that it is unlawful for an employer **"to** discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section."  Ohio Rev. Code § 4112.02(I).  The Ohio Supreme Court has held that in order for Plaintiff to establish a prima facie case of retaliation, she "must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action."  *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶¶ 13-14, 116 Ohio St. 3d 324, 327, 879 N.E.2d 174, 180.  Applying the *McDonnell Douglas* framework, "[i]f a complainant establishes a prima facie case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions."  *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "If the employer satisfies this burden, the burden shifts back to the complainant to demonstrate 'that the proffered reason was not the true reason for the employment decision.'"  *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

It is undisputed that Plaintiff engaged in the protected activity of lodging a sexual harassment complaint against a co-worker by reporting Mr. Isenberg's harassing conduct to Ms. Delgado, making Defendant aware that she engaged in such an activity.  On May 7, 2020, Defendant took an adverse employment action against Plaintiff by terminating Plaintiff's employment.  Defendant argues that there is no causal connection between the protected activity and the adverse action because Plaintiff's termination was a result of budget cuts and the COVID-19 pandemic, rather than because of Plaintiff's sexual harassment complaint.  Plaintiff

(4:22CV0126)

argues that the temporal proximity between Plaintiff's sexual harassment report and her termination precludes summary judgment.  *See* ECF No. 37 at PageID #: 1367.

There was only roughly two and a half months between Plaintiff's sexual harassment report and her termination.  Defendant rebuts that although under normal circumstances, the temporal proximity argument may be persuasive, given the COVID-19 pandemic that was impacting the entire country at the time, the circumstances were anything but normal.  Additionally, Defendant argues that Plaintiff was paid her full salary every week between March 20, 2020 and April 13, 2020 despite not performing any work during that time.  ECF No. 35-1 at PageID #: 1062.  Between April 13, 2020 and May 7, 2020, Plaintiff was only working three hours a day and still received full-time pay.  ECF No. 35-1 at PageID #: 1062.  Months after laying off Plaintiff, Defendant abolished Plaintiff's administrative coordinator position in September 2021.  ECF No. 35-1 at PageID #: 1064.

Although Defendant, along with the rest of the nation, was faced with unprecedented circumstances brought on by the COVID-19 pandemic, Plaintiff rebuts by relaying (without dispute) that she was the only TCVSC employee laid off around the time that Defendant terminated her employment.  Plaintiff's workload did decrease as a result of the pandemic, but she was not unique in this respect.  The workload decreased for the entire TCVSC office.  ECF No. 30 at PageID #: 893 (Herman Breuer Tr.).  Furthermore, Mr. Breuer, who was allegedly friends with Mr. Isenberg even outside of the work setting, laid off Plaintiff for budget cut reasons even though Plaintiff's salary was nowhere close to the amount of the budget that TCVSC was instructed to reduce.  It is disputed whether Mr. Breuer consulted with Ms. Delgado and TCVSC commissioners prior to informing Plaintiff that her employment was terminated.

(4:22CV0126)

Given that there are genuine disputed material facts relevant to Plaintiff's retaliation claim, the Court denies summary judgment on Plaintiff's Count IV.  The claim will be heard by a jury.

### IV. Conclusion

Accordingly, the Court hereby grants Defendant's Motion for Summary Judgment (ECF No. 35) in part and denies it in part.  The Court grants summary judgment in favor of Defendant on Plaintiff's Counts I and III, dismissing these federal claims because the Court finds that Defendant does not qualify as an employer under Title VII.  The Court denies summary judgment on Plaintiff's Counts II and IV, the state-law claims because there are genuine disputes of material facts regarding these claims.  Exercising its discretion to do so, the Court maintains supplemental jurisdiction over the state law claims.  The Final Pretrial Conference will be conducted March 15, 2023 at 10:00 a.m., as scheduled, Trial by jury will follow.

IT IS SO ORDERED.

March 14, 2023                                          /s/ Benita Y. Pearson
Date                                                          Benita Y. Pearson
                                                                 United States District Judge

21